Mary BENNETT and Michaeline For-
sythe, on behalf of themselves and
all others similarly situated

v.

John F. WHITE, Jr., Secretary of the Pennsylvania Department of Public Welfare; Director of the Office of Program Accountability of the Pennsylvania Department of Public Welfare; Director of the Claims Settlement Division of the Pennsylvania Department of Public Welfare; William Slom, individually and as Agent-in-Charge of the Claims Settlement Area Office for the Southeastern Region of the Pennsylvania Department of Public Welfare; Robert J. Henry, individually and as Support Director of Claims Settlement Area Office for the Southeastern Region of the Pennsylvania Department of Public Welfare.

Civ. A. No. 79–1764.

United States District Court,
E.D. Pennsylvania.

Oct. 2, 1987.

---

Deborah Hanis, Community Legal Services, Inc., Law Center North Central, Philadelphia, Pa., for plaintiffs.

John G. Knorr, III, Sr. Deputy Atty. Gen., Harrisburg, Pa., for defendants.

## MEMORANDUM AND ORDER

HANNUM, Senior District Judge.

The plaintiffs Mary Bennett and Michaeline Forsythe instituted this class action challenging Pennsylvania's administration of the child support enforcement program established by Title IV–D of the Social Security Act, 42 U.S.C. §§ 651–667, and its implementing regulations.

The defendants are the Secretary and four other officials of the Pennsylvania Department of Public Welfare.

Presently before the Court are cross motions for summary judgment. The relief sought by the plaintiffs includes equitable relief and a declaratory judgment declaring that the defendants violate that portion of the Social Security Act which concerns the child support enforcement program established by Title IV–D of the Social Security Act, 42 U.S.C. §§ 651–667 and its regulations by failing to comply with the federal requirements; that the defendant Secretary of the Department of Public Welfare violates the Taking Clause of the Fifth and Fourteenth Amendments to the United

States Constitution by failing to make correct refunds of excess support and support payments collected after the termination of benefits which had been provided in accordance with the Aid to Families with Dependent Children Program (AFDC) and by failing to pay interest on improperly retained support; and that the Secretary violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution by failing to provide a periodic accounting of support collected and assistance rendered to caretakers of children whose support is collected by the defendants and a notice of procedures for objecting to the amount or lack of a refund.

The Court notes that the plaintiffs' claims can be divided into three groups: (I) five claims arising under the federal statute and its regulations; (II) one claim under the Taking Clause; and (III) one claim under the Due Process Clause. The Court further observes that the defendants do not dispute the following facts as related by the plaintiffs in the statement of facts in support of plaintiffs' motion for summary judgment.

Pennsylvania receives federal funds pursuant to the AFDC program under Title IV–A of the Social Security Act, 42 U.S.C. §§ 601–615. In accordance with Title IV–D of the Social Security Act, 42 U.S.C. §§ 651–667, Pennsylvania is responsible for having in effect a plan to secure child support for children who are AFDC recipients. 42 U.S.C. § 654 and § 602(a)(27). Pursuant to the Social Security Act, the Pennsylvania Department of Public Welfare (DPW) requires, as a condition of eligibility for AFDC benefits, that all applicants or recipients must assign to DPW all rights to support which any member of the assistance unit may have. 42 U.S.C. § 602(a)(26). DPW has designated the Office of Fraud and Abuse Investigation and Recovery, formerly the Bureau of Claim Settlement, as the agency in Pennsylvania responsible for administering its plan under Title IV–D of the Social Security Act for enforcing child support orders of AFDC recipients. The Office of Fraud and Abuse Investigation and Recovery administers the IV–D program in cooperation with the County Boards of Assistance, which administer the AFDC program, and through the Domestic Relations sections of the respective Pennsylvania Courts of Common Pleas, with which the Office maintains cooperative agreements.

As part of DPW's system for administering the IV–D program, DPW entered into an agreement, effective August 1, 1975, with the Domestic Relations Branch of the Family Court Division of the Philadelphia Court of Common Pleas (Philadelphia Family Court) which provides that the Domestic Relations Branch has primary responsibility for collecting child support payments in cases where an AFDC recipient has assigned support rights to DPW. Thus, the Philadelphia Family Court functions as a local IV–D agency at the Philadelphia County level of government. Pursuant to the cooperative agreement, the Family Court Domestic Relations Branch collects and remits to DPW all child support payments in cases where an AFDC recipient has assigned support rights to DPW. The Social Security Act and its implementing regulations set forth the procedures according to which Pennsylvania is required to distribute the support monies remitted to DPW pursuant to assignments by AFDC recipients. 42 U.S.C. §§ 654(5), (11) and 657(b), (c); 45 C.F.R. §§ 232.30, 302.32, and 302.51. In addition, the Office of Child Support Enforcement of the Department of Health and Human Services has issued instructions to the states for the distribution of child support collections.

I. *Violations of the federal statute and regulations*

1. The failure to reassign support order payments promptly upon the termination of assistance.

When a family ceases receiving AFDC assistance, the assignment of child support terminates. 45 C.F.R. § 302.51(f). DPW retains the right to attempt to collect arrearage payments for the amount of any unpaid support obligation that accrued under the assignment. 45 C.F.R. § 302.51(f). In seventy-six of the seventy-eight cases

for which the defendants produced or made available information concerning persons identified as recipients of support refunds during the first quarter of 1983, DPW took an average of between 164.9 and 178.95 days [1] from the date the AFDC case should have terminated to reassign the current support from DPW to the former recipient. In twenty-three cases identified by the defendants, DPW took an average of 301.67 days from the date the last AFDC check was paid to notify the Philadelphia Family Court that the assignment of support had terminated. These delays continue.

2. The failure to make prompt payment of support collected after assistance terminates.

Before October 1, 1984, whenever a family stopped receiving AFDC benefits, the IV-D agency had the option of continuing to collect current support payments from the absent parent for a period not to exceed three months from the month following the month in which the family stopped receiving AFDC benefits. 42 U.S.C. § 657(c)(1); 45 C.F.R. § 302.51(e)(1) (1984). Except for such amounts that the State retains as reimbursement for any past assistance payments made to the family for which the State has not been reimbursed, support amounts so collected were to be paid to the family. 42 U.S.C. § 657(c)(1); 45 C.F.R. § 302.51(e)(1) (1984). Effective October 1, 1984, the IV-D agency is required to continue to collect support for the three month period. 42 U.S.C. § 657(c)(1) (as amended October 1, 1984); 45 C.F.R. § 302.51(e)(1) (1985). DPW complies with this requirement by having the Family Court Domestic Relations Branch collect support. All support payments so collected must be paid to the family. 42 U.S.C. § 657(c)(1); 45 C.F.R. § 302.51(e)(1). Nevertheless, the Philadelphia Family Court routinely collects and remits to DPW current support paid for persons whose assistance terminated. In seventy-six of the seventy-eight cases for which the defendants produced or made available information concerning persons identified as recipients of support refunds during the first quarter of 1983, the Philadelphia Family Court collected and remitted to DPW current support for persons whose assistance had terminated. In three of those cases DPW never refunded the support to the former recipient. With respect to the other seventy-three cases, DPW took an average of 279.99 days from the date support was first collected after the assistance case should have been closed to authorize a refund, and an additional four to eight weeks to send the refund to the beneficiary.

In some cases, the Philadelphia Family Court sent former AFDC recipients a form letter stating that it would take eight weeks from the date the Family Court requested a refund for the recipient to receive the refund. The form letter also advised the recipient not to call the Family Court accounting unit concerning the refund until nine weeks had expired. In the seventy-three cases in which the defendants refunded support remitted to DPW after the assistance case closed during the first quarter of 1983, the amount of the refunds ranged from $25.00 to $1874.66 and averaged $370.03. Former recipients were denied the use of these monies for their children until the refunds were made. In twenty-three cases identified by the defendants, the amount of the support refunds ranged from $1001.00 to $4467.40 and averaged $1789.93; DPW took an average of 397.22 days after the last AFDC check was paid to make the refund.

In the case of Michaeline Forsythe, a named plaintiff, the Philadelphia Family Court continued to collect support monies payable to Ms. Forsythe on behalf of her children after her AFDC grant terminated in December 1978 and paid these monies to DPW which in turn retained them even though these monies constituted the only means of support for the children during a period when Ms. Forsythe had no other source of income. The IV-D agency never notified Ms. Forsythe that it would contin-

---

**1.** The plaintiffs calculate the average delay to be 178.95 days and the defendants calculate the delay to be 164.9 days. The Court did not check this calculation or the others mentioned in this Memorandum. The other calculations are undisputed.

ue to collect support after her assistance terminated. Despite Ms. Forsythe's repeated requests, the defendants failed to pay the support monies collected by the Family Court and remitted to DPW. Consequently, Ms. Forsythe was forced to reapply for AFDC benefits because she did not have access to the only other means of support for her children. Ms. Forsythe did not receive a refund of child support payments until four months after her assistance had terminated. In addition to remitting support to DPW rather than to the caretaker of the child after AFDC benefits terminate, the Philadelphia Family Court frequently holds support payments collected after assistance terminates for some period of time before releasing the payments to the caretaker on behalf of the child. This occurred in over half of the cases of individuals identified as recipients of support refunds during the first quarter of 1983.

According to an audit by the Office of Child Support Enforcement, the Philadelphia Family Court Domestic Relations Branch Bureau of Accounts holds substantial sums of support collections. At the time of the audit, there were 343 AFDC support accounts with money on hold; ninety-six of those had been on hold for more than a year.

3. The failure to make prompt payment of excess support collected.

DPW is required to pay to AFDC recipients all current support collections which exceed the AFDC grant but which do not exceed the court order. 42 U.S.C. § 657(b)(3); 45 C.F.R. 302.32(e), 302.-51(b)(3). DPW is also required to pay to AFDC recipients support amounts collected in excess of the court order if there are no past assistance payments made by DPW which have not been reimbursed. 42 U.S.C. § 657(b)(4); 45 C.F.R. § 302.51(b)(5). Federal law requires that DPW redetermine an AFDC recipients' continued eligibility no later than the second month after the month in which the child support was collected. If the support collected exceeds the AFDC grant and renders the recipient ineligible, DPW must take steps to termi-

nate the AFDC grant and must pay the excess support to the recipient on the same date that the recipient would have received the AFDC benefit if the grant had not been terminated. 45 C.F.R. §§ 232.20(a)(1), 302.-32(b). DPW, however, does not maintain records to enable the defendants to identify people whose AFDC benefits were terminated because of excess income from child support. DPW collected excess support during the period when AFDC benefits were paid in eleven of the seventy-eight cases for which the defendants produced or made available information concerning persons identified as recipients of support refunds during the first quarter of 1983. In none of the eleven cases did DPW take prompt steps to terminate the AFDC grant when the excess support was collected and in none of the cases did DPW pay the excess support to the recipient on the same date that the recipient would have received the AFDC benefit if the grant had not been terminated. In four of the cases, the excess support was never paid to the former recipient. In the other seven cases, the excess support was paid an average of 134.80 days after the date the next AFDC check would have been paid if the AFDC case had not been closed. Audits performed by the Office of Child Support Enforcement of Pennsylvania's IV–D Program found that the State's distribution system did not provide for making excess payments to the family.

4. The improper collection of support for more than three months after assistance terminates without the recipient's authorization.

The IV–D agency is required to collect support payments after assistance terminates for a period not to exceed three months from the month following the month in which such family ceased to receive assistance. At the end of the three month period, the IV–D agency may continue to collect support only if it has been authorized to do so by the former recipient. 42 U.S.C. § 657(c); 45 C.F.R. § 302.51(e)(3).

DPW reported to the Department of Health and Human Services that its IV–D

agency makes no collections after assistance terminates.[2] The Philadelphia Family Court, however, continued to collect and remit to DPW current support for more than five months after the month of the last AFDC check for the child in twenty-two of the seventy-eight cases for which the defendants produced or made available information concerning persons identified as recipients of support refunds during the first quarter of 1983. In ten of the cases, the Philadelphia Family Court collected and remitted to DPW current support for twelve or more months after the month of the last AFDC check for the child. In one case, the Philadelphia Family Court collected and remitted support for fifty-six months after the month of the last AFDC check for the child. In six cases cited by the plaintiffs, the Philadelphia Family Court collected and remitted to DPW current support for more than five months after the month of the last AFDC check for the child. In none of these cases did DPW or the Philadelphia Family Court seek or obtain the former recipient's authorization to collect support for more than three months after the month in which the recipient received the last assistance check.

    5.  The failure to notify AFDC recipients that the Philadelphia Family Court will continue to collect support after AFDC terminates.

In accordance with 45 C.F.R. § 302.32(b), the IV–D agency notifies the family if the agency will continue to provide services after assistance terminates. Without notifying the family that it will do so, DPW routinely collects support after AFDC benefits end despite the notification requirement.

With respect to the preceding claims, the plaintiffs do not contend that the defendants' regulations or procedures violate federal law. Rather, they argue that the defendants' misapplication of the procedures and regulations constitutes a violation of federal law. The defendants assert that "they have established and followed policies and procedures which are designed to comply with the requirements of the law" and that their policies and procedures do so comply. They admit, however, that "during any given three-month period, there will likely be eighty cases where someone makes a mistake," and believe that "in considering the rights of the class, it is their [defendants'] general policies and procedures, and not isolated errors and omissions, that control." The Court believes that it is inappropriate for the defendants to suggest that their policies and procedures control when they fail to follow them.

In the Court's view, there is no genuine issue as to any material fact. The Court further believes that the defendants' failure to reassign court orders upon termination of AFDC benefits, failure to insure that the Philadelphia Family Court makes prompt payment of support collected after assistance terminates, failure to make prompt payment of excess support collected, improper collection of support for more than three months after assistance terminates without the recipient's authorization, and failure to notify AFDC recipients that the Philadelphia Family Court will continue to collect support after AFDC terminates show that the defendants do not comply with the procedures as provided in 42 U.S.C. §§ 602(a)(27); 654(5), (11), and 657(b), (c), and 45 C.F.R. §§ 232.20(a)(1); 302.32(b); and 302.51(e), (f). The misapplication of the law and regulations constitutes a violation of federal law. The Court will not enter judgment for the plaintiffs unless and until it receives additional briefs from counsel concerning an appropriate remedy with respect to defendants' non-compliance wth federal requirements.

## II. *Taking Clause Claim*

### Miscalculation of refunds

    ▪ Out of seventy-eight cases for which the defendants produced or made available information concerning persons identified as recipients of support refunds during the first quarter of 1983, there were

---

**2.** The information appears in the Quarterly Report of Collections dated September 30, 1984, December 30, 1984, March 30, 1985, and June 30, 1985.

forty-six cases in which DPW miscalculated the amount of the refund, in addition to the four cases where DPW never paid the excess support collected. In almost all of these cases, DPW retained monies owed to the children on whose behalf the support was paid; in a few instances, DPW directed the refund to the wrong person. In all of these forty-six cases, the children never received the support. Refund amounts in the forty-six cases in which erroneous refunds were paid range from $10.00 to $1746.60; the average error is $195.57.

The plaintiffs contend that DPW's failure to make correct refunds and failure to pay interest on improperly retained support constitutes a taking of the plaintiffs' property in violation of the Fifth and Fourteenth Amendments.[3] The plaintiffs further contend that DPW's future taking of plaintiffs' property should be enjoined, that DPW should be ordered to correct the refunds made to all class members, and that DPW should be ordered to pay interest to all class members for the period during which DPW improperly retained their support.

The defendants assert that the plaintiffs' count of forty-six cases in which DPW miscalculated refunds is inflated. The defendants also state that

> a relative handful of errors cannot justify class-wide injunctive relief, particularly on an issue such as this. Is the Secretary of Public Welfare to be held in contempt every time one of his clerks makes a mistake in arithmetic?

Without addressing the plaintiffs' claims any further, the defendants contend only that the injunctive relief requested by the plaintiffs, that is the payment of interest, is barred by the Eleventh Amendment. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The defendants fail to discuss the plaintiffs' request that DPW correct the refunds made to plaintiffs.

Based on the facts set forth by the plaintiffs and the defendants' admission that as the result of mistakes, the defendants held onto the plaintiffs' property, the Court finds that the defendants took the plaintiffs' property. The Court concludes that the taking, for which the plaintiffs were not compensated, constitutes a violation of the Fifth and Fourteenth Amendments.

■ While the Eleventh Amendment bars the payment of interest to plaintiffs,[4] it certainly does not preclude the payment to plaintiffs of their money which the defendants withheld improperly. With respect to the refunds of support payments inadvertently withheld by the defendants, the Court will direct the parties to submit briefs in which they inform the Court of outstanding refund payments and procedures which, if adopted, would improve the defendants' system.

### III. *Due Process Clause claim*

Absence of accounting for recipients whose support is collected by DPW.

■ DPW does not provide periodic statements to recipients of AFDC showing the amount of support collected by DPW and the amount of public assistance expended for the individuals for whom the support is paid. Consequently, recipients do not know whether the support collected exceeds the public assistance for the child or children for whom the support is collected and whether DPW is retaining support to which the child or children are legally entitled. DPW does not routinely provide former recipients who receive refunds of

---

**3.** The Fifth Amendment of the Constitution pertinently provides that "nor shall private property be taken for public use, without just compensation." This prohibition applies against the State through the Fourteenth Amendment. *Webb's Fabulous Pharmacies v. Beckwith*, 449 U.S. 155, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980).

**4.** *See Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Contrary to the plaintiffs' belief, *Kirby Forest Industries, Inc. v. United States*, 467 U.S. 1, 104 S.Ct. 2187, 81 L.Ed.2d 1 (1984), does not support their position that they are entitled to receive interest. In *Kirby Forest*, the Supreme Court refers to three statutory methods employed by the United States when it appropriates private land for a public purpose. The Supreme Court's reference to the payment of interest, however, is limited to cases involving the taking of land. *Id.* at 10–11, 104 S.Ct. at 2194–2195. *See* 40 U.S.C. § 258a.

excess support collected with an explanation of how it was determined that excess support was paid or how the refund was calculated so that former recipients can determine whether the amount of the refund is correct.

The Philadelphia Family Court also does not provide any sort of periodic accounting statement to beneficiaries of child support orders. If an individual who is not represented by an attorney requests information from Family Court concerning child support payments, she will be given a "statement of account" which gives only very limited information, and is insufficient to determine whether or not child support is being or has been correctly and promptly distributed, and whether or not the individual is entitled to a refund of child support from DPW. An attorney can request a computer print-out from Family Court. The print-outs provide significantly more information than a statement of account, but are confusing and difficult to read, and do not provide sufficient information to determine whether or not support has been correctly distributed.

The plaintiffs contend that under the Fourteenth Amendment Due Process Clause, they are entitled to receive a monthly accounting, which includes a statement of the amount of support collected, an explanation of how a refund was calculated, an explanation of the procedures for asserting a refund claim, and a statement of the amount of public assistance received by the family.

The defendants concede that Title IV–D of the Social Security Act now requires states, at least annually, to provide recipients with an annual accounting of support collected in their behalf. 42 U.S.C. § 654(5); 45 C.F.R. § 302.54. The defendants further submit that as a part of a settlement in another suit, *Shenigo v. Cohen*, No. 85–7221 (E.D.Pa.), DPW agreed to provide recipients with monthly accountings of the support collected in their behalf and that consequently, part of the plaintiffs' request is moot.

In reply, the plaintiffs assert that many members of the plaintiff class will not receive notices because the plaintiff class includes people who do not still receive assistance, yet are nonetheless having their support diverted to DPW. The notice provided in accordance with Title IV–D of the Social Security Act, and the *Shenigo* case is sent only to those who receive assistance. The plaintiffs contend that every individual whose support is sent to DPW is entitled to an accounting under the Due Process Clause.

The Court believes that the evidence shows, and the defendants admit, that the plaintiffs have been deprived of their property when their refunds were calculated incorrectly or never sent to them. The accounting contemplated by the plaintiffs would greatly benefit the people for whom the system was set up. In addition, by providing information as to how a refund was calculated and regarding the procedure for asserting a refund, the defendants would remedy situations in which members of the class were deprived of their money. It is unnecessary, however, for the defendants to provide information in the monthly statement concerning the amount of assistance received by the family. Recipients should be able to keep a record of how much assistance they have received.

An appropriate Order follows.

### ORDER

AND NOW, this 2nd day of October, 1987, upon consideration of the plaintiffs' motion for summary judgment (Docket Entry No. 53), in which the plaintiffs seek various forms of equitable relief including a declaratory judgment declaring that the defendants' procedures with respect to the child support enforcement program established by Title IV–D of the Social Security Act, 42 U.S.C. §§ 651–667 and its regulations fail to comply with the federal requirements, that the defendant Secretary of the Department of Public Welfare (Secretary) violates the taking clause of the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 by failing to make correct refunds of excess support and support payments collected after the termination of benefits

which had been provided in accordance with the Aid to Families with Dependent Children Program and by failing to pay interest on improperly retained support, and that the Secretary violates 42 U.S.C. § 1983, the Due Process Clause of the Fourteenth Amendment to the United States Constitution by failing to provide a periodic accounting of support collected and assistance rendered to caretakers of children whose support is collected by the defendants and a notice of procedures for objecting to the amount or lack of a refund; the defendants' motion for summary judgment (Docket Entry No. 58); the declaration of Joel M. Ressler (Docket Entry No. 59); the defendants' memorandum in opposition to the plaintiffs' motion for summary judgment and in support of their cross motion for summary judgment (Docket Entry No. 60); the plaintiffs' response to the defendants' cross motion for summary judgment (Docket Entry No. 61); and the foregoing Memorandum, it is hereby ORDERED that:

Within thirty (30) days of the entry of this Order, counsel will submit to the Court a joint proposal that addresses the following: a remedy with respect to the defendants' mishandling of cases, a list of outstanding refund payments, and procedures which, if adopted, would improve the defendants' system. Counsel will also submit a joint proposal concerning the language of a monthly statement that contains information regarding support collected, the manner in which refunds are calculated, and procedures for asserting a refund claim.