865 F.2d 1395
 Mary BENNETT and Michaeline Forsythe, on behalf of
themselves and all others similarly situated,
Appellants in 88-1204,
v.
John F. WHITE, Jr., Secretary of the Pennsylvania Department
of Public Welfare; James R. Adams, Director of The Office
of Program Accountability of the Pennsylvania Department of
Public Welfare; Clyde Black, Director of the Claims
Settlement Division of the Pennsylvania Department of Public
Welfare; William Slom, individually, and as Agent-In-Charge
of the Claims Settlement Area Office of the Southeastern
Region of the Pennsylvania Department of Public Welfare;
Robert J. Henry, individually, and as Support Director of
Claims Settlement Area Office for the Southeastern Region of
the Pennsylvania Department of Public Welfare, Appellants in 88-1267.
 Nos. 88-1204, 88-1267.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 30, 1988.
Decided Jan. 13, 1989.
Rehearing and Rehearing In Banc
Denied Feb. 10, 1989.
 
 Amy E. Hirsch, Deborah Harris (argued), Community Legal Services, Inc., Philadelphia, Pa., for appellants in No. 88-1204.
 LeRoy Zimmerman, Atty. Gen., Mary B. Seiverling (argued), Deputy Atty. Gen., Gregory R. Neuhauser, Sr. Deputy Atty. Gen., John G. Knorr, III, Chief Deputy Atty. Gen., Chief, Litigation Section, Harrisburg, Pa., for appellants in No. 88-1267.
 Before GIBBONS, Chief Judge, SEITZ, Circuit Judge, and FARNAN, District Judge*.OPINION OF THE COURT
 GIBBONS, Chief Judge:
 
 
 1
 The plaintiffs, Mary Bennett and Michaeline Forsythe, are class representatives in a class action which challenges the manner in which Pennsylvania officials administer the child support enforcement program established by Subchapter IV-D of the Social Security Act, 42 U.S.C. Secs. 651-667, and its implementing regulations. The class consists of all present or former recipients of public assistance, residing in Philadelphia, who assigned their own and their childrens' rights to child support to the Pennsylvania Department of Public Welfare (DPW), and whose support money is actually being collected by DPW. The class representatives obtained a summary judgment in favor of the class, but appeal from the limited relief ordered by the district court. The defendants are John F. White, Jr., Secretary of DPW, James R. Adams,[1] Director of the Office of Program Accountability of DPW, Clyde Black, Director of the Claims Settlement Area Office for the Southeastern Region of DPW, and Robert J. Henry, Support Director of the same Settlement Area Office. These defendants cross-appeal, contending that their cross-motion for summary judgment should have been granted. We hold that summary judgment in favor of the class was required, but that the limited relief ordered was, considering the nature of the violations found, legal error or an abuse of discretion. Thus we will affirm the liability judgment in favor of the class, but remand for consideration of further relief.
 
 I.
 
 2
 Pennsylvania has elected to participate in the federal spending program authorized by Subchapter IV-A of the Social Security Act, 42 U.S.C. Secs. 601-615. That title authorizes expenditures for aid to families with dependent children in states which have submitted and have had approved by the Social Security Administration a plan for aid and services to needy families with children (AFDC recipients). This federal spending clause program is a matching funds program intended to encourage state aid and service to AFDC recipients. The level of federal support varies from year to year and from state to state, but it is always equal to at least 50 percent of the state's expenditures for AFDC purposes. 42 U.S.C. Secs. 1301(a)(8), 1396d(b). A state plan for such aid and service must, among other features, "... provide that, as a condition of eligibility for aid, each applicant or recipient will be required--
 
 
 3
 (A) to assign to the State any rights to support from any other person such applicant may have (i) in his own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid, and (ii) which have accrued at the time the assignment is executed."
 
 
 4
 42 U.S.C. Sec. 602(a)(26)(A). The assigned third party payments are collected by the state agency, which may from the collected payments reimburse the state and the federal government in proportion to their respective participation in assistance to the AFDC recipient. 42 U.S.C. Sec. 657(b)(4). Federal reimbursement is accomplished by deducting from federal grants the net amounts of assigned support payments recovered by the state in the prior quarter. 42 U.S.C. Sec. 603(b)(2)(B), (C); 45 C.F.R. Sec. 302.51. The state plan must provide that "[w]hen a family ceases receiving assistance under the State's Subchapter IV-A plan, the assignment of support rights under Sec. 232.11 of this title terminates except with respect to the amount of any unpaid support obligation that has accrued under such assignment." 45 C.F.R. Sec. 302.51(f). Furthermore, "[i]f the amount collected is in excess of the amounts required to be distributed [to reimburse the state or the federal government], such excess shall be paid to the family." 45 C.F.R. Sec. 302.51(b)(5).
 
 
 5
 When periodic third party support payments for a child exceed the amount of AFDC assistance for the child for a period, the state plan must provide for a determination whether if treated as income the support payments render the child ineligible for assistance. Such redeterminations must occur within two months after the support is collected. 45 C.F.R. Sec. 232.20(b)(1). The plan must provide that the recipient be notified of the termination of eligibility, and entire third-party support payments must be paid the recipient in the month for which ineligibility was determined. Id. The plan must also provide that if public assistance stops, the state may only continue to collect current third-party support payments for a maximum of three months, unless the recipient authorizes an extension. 45 C.F.R. Sec. 302.51(e). All support payments collected after termination of assistance, however, are for the benefit of the recipient. "The state may not charge fees from support collections and must pay all amounts collected which represent monthly support payments to the family." Id. Thus, as is typical of federal spending clause programs, Pennsylvania has entered into a contractual undertaking with the United States that in exchange for federal benefits it will operate a state program in accordance with federal requirements. See, e.g., Delaware Dept. of Health v. United States Dept. of Educ., 772 F.2d 1123 (3d Cir.1985).
 
 II.
 
 6
 The class representatives' complaint, filed on May 1, 1979, alleges the AFDC arrangements for collection of third-party support payments outlined above, and the responsibility of the named defendants for compliance with those arrangements. It alleges that DPW arranged with the Philadelphia Family Court and other courts for third-party support payments to be made to it, during the continuance of AFDC assistance in amounts in excess of the amount the state was entitled to, and to continue such payments after assistance was terminated. The complaint alleges that the defendants willfully and maliciously refused to account for such excess collections. In the absence of an account, it is alleged, AFDC recipients cannot determine whether the state is retaining support payments which belong to the recipients. This conduct, the complaint alleges, violates Subchapter IV-D of the Social Security Act, the implementing regulations thereunder, and the Due Process Clause of the Fourteenth Amendment. The prayer for relief requests that the court:
 
 
 7
 59. Declare this action a class action pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure;
 
 
 8
 60. Declare defendants' actions and procedures invalid and unconstitutional under the Social Security Act, 42 U.S.C. Secs. 601 et seq. and 651 et seq.; 42 U.S.C. Sec. 1983; and the Due Process Clause of the Fourteenth Amendment.
 
 
 9
 61. Preliminarily and permanently enjoin defendants' future retention of monthly support collections in excess of public assistance rendered;
 
 
 10
 62. Preliminarily and permanently enjoin defendants from retaining monthly support collections after public assistance has terminated;
 
 
 11
 63. Preliminarily and permanently enjoin defendants from refusing to provide recipients with periodic accountings of support monies collected and public assistance expended;
 
 
 12
 64. Order that defendants pay to the plaintiffs all support monies collected in excess of public assistance rendered, including reasonable interest;
 
 
 13
 65. Order that defendants pay reasonable interest to the plaintiffs on all support monies held by the plaintiffs after assistance terminated;
 
 
 14
 66. Award the plaintiffs their costs and reasonable attorneys fees;
 
 
 15
 Prior to the filing of an answer, the defendants moved, pursuant to Fed.R.Civ.P. 12(b), to dismiss the complaint. That motion was denied, and the district court granted the class representatives' motion for a class determination. The defendants answered on October 15, 1979. The answer does not put in issue the allegations of the complaint with respect to the federal requirements of the AFDC plan for collection of child support payments. It admits that the defendants do not provide regular statements of account of child support collections to AFDC recipients, but denies that such accounts are necessary in order to determine if refunds are owed. It alleges that errors which resulted in overcollections of support payments were made, not by the defendants, but by the Philadelphia Family Court. Affirmatively, the defendants plead that "[i]nsofar as the plaintiffs seek an award of damages and other payments from the state treasury, plaintiffs' claims are barred by the Eleventh Amendment to the Constitution of the United States." The answer also pleads affirmatively that "[t]he defendants have acted at all times in the good faith belief in the legality of their conduct, and are therefore entitled to immunity from damages."
 
 
 16
 The class representatives engaged in extensive discovery. On July 14, 1986, the parties filed a stipulation as to certain facts. Both sides moved for summary judgment. Each side contended that there were no disputed issues of material fact. The class representatives' motion requested that the court
 
 
 17
 order defendants to comply with federal requirements governing defendants' collection of child support, order defendants to make correct refunds of support owing to plaintiffs and to pay plaintiffs interest on support payments wrongfully retained by defendants, and order defendants to provide plaintiffs with a periodic accounting of support collected and assistance rendered.
 
 
 18
 The defendants requested that judgment be entered in their favor because on the summary judgment record, by this time an extended one, they were entitled to judgment as a matter of law.
 
 
 19
 The district court, reviewing the summary judgment record, concluded that it required a holding that the defendants: (1) violated Subchapter IV-D and the implementing regulations by failing to reassign support payments promptly upon the termination of assistance; (2) violated Subchapter IV-D and the implementing regulations by failing to make prompt payment of support payments collected after AFDC assistance terminated; (3) violated Subchapter IV-D and the implementing regulations by failing to make prompt payment of excess support collected; (4) violated Subchapter IV-D and the implementing regulations by improperly collecting support payments for more than three months after AFDC assistance terminated, without the recipients' authorization; (5) violated Subchapter IV-D implementing regulations by failing to notify AFDC recipients that the Philadelphia Family Court would continue to collect support after AFDC payments terminate; (6) violated the Due Process Clause of the Fourteenth Amendment by miscalculating refunds, thereby retaining support monies which belonged to children and parents on whose behalf those monies were paid and by refusing to pay interest on support payments wrongfully withheld; (7) violated the Due Process Clause of the Fourteenth Amendment by failing to provide periodic statements to AFDC recipients showing the amount of third-party child support collected by DPW. On October 5, 1987, [671 F.Supp. at 351], , the court ordered that:
 
 
 20
 Within thirty (30) days of the entry of this Order, counsel will submit to the Court a joint proposal that addresses the following: a remedy with respect to the defendants' mishandling of cases, a list of outstanding refund payments, and procedures which, if adopted, would improve the defendants' system. Counsel will also submit a joint proposal concerning the language of a monthly statement that contains information regarding support collected, the manner in which refunds are calculated, and procedures for asserting a refund claim.
 
 
 21
 In compliance with the October 5, 1987 order, the parties submitted proposals for remedial orders. The district court, on February 19, 1988, entered an order substantially in the form proposed by the defendants. The appeal by the class representatives and cross-appeal by the defendants followed.
 
 III.
 
 22
 The defendants contend that the district court erred in holding that the summary judgment establishes any violation by them of federal statutory or constitutional law. The defendants do not dispute that the record discloses instances of failure to reassign support orders on termination of assistance, failure to make prompt payment of collections made after termination of assistance, failure to pay over support collected in excess of what is due the state for reimbursement of AFDC assistance, continuation of collections for more than three months after termination of assistance, and failure to notify recipients that the Family Court would continue collections of support after termination. Nor do they dispute that the record discloses forty-six calculation errors in favor of the state in a sample of seventy-eight cases. Finally, they do not dispute that they do not give recipients a periodic accounting of support collected or assistance paid. Rather, they urge that the evidence establishes violations which are so minuscule that a judgment in favor of the class was improper, and judgment should have been entered in their favor. They urge, further, that due process does not require that they make periodic accountings of support collections and assistance payments.
 
 
 23
 The defendants do not contend that the court abused its discretion in approving a class action. Our review of the summary judgment in favor of the class is plenary. E.g., Pollock v. American Tel. & Tel. Long Lines, 794 F.2d 860, 864 (3d Cir.1986). In this case, moreover, the defendants concede that "[t]he appeal as to the liability issue does not raise factual questions." Appellees Brief p. 21. Thus our review with respect to the liability determination narrows to the question whether, given the undisputed facts relied upon by the district court, the class members are entitled to judgment as a matter of law.
 
 
 24
 The defendants' principal legal argument is that the summary judgment record discloses that they have adopted regulations for the collection and distribution of support payments which comply with the governing federal statutes and regulations. This, defendants urge, is all they are legally required to do. The district court aptly responded to this argument that it is "inappropriate for the defendants to suggest that their policies and procedures control when they fail to follow them."
 
 
 25
 Alternatively, the defendants urge that the evidence in the summary judgment record is insufficient as a matter of law to support the liability judgment. The class representatives rely on a sample of seventy-eight support collection cases from the first quarter of 1983. These seventy-eight cases include all refunds paid by DPW during that quarter. In forty-six out of seventy-eight cases the refunds were miscalculated. During discovery, the class representatives requested that defendants disclose information on all cases in 1982 and the first quarter of 1983 for which a refund of excess support collections was made. Defendants only provided information as to the first quarter of 1983. Defendants were also asked to produce a list of all AFDC recipients whose aid was terminated during 1982 or the first quarter of 1983 because support payments rendered them ineligible for AFDC assistance. The defendants responded that they could not answer the question because they didn't have the necessary records. The defendants are required, however, to furnish this same information annually to the Federal Office of Child Support Enforcement pursuant to Form OCSE-3 and 45 C.F.R. Sec. 302.15(a). (App. at 822 & 828). The defendants' inability to comply with discovery orders permits the legitimate inference that DPW's record keeping does not satisfy federal requirements. The information sought was not available to the class representatives other than from the defendants. The defendants cannot be heard contending that the sample of seventy-eight cases on which the district court relied is an unrepresentative cross-section, when their apparent non-compliance with federal record keeping requirements and their failure to make discovery makes any more representative cross-section unavailable. See Fed.R.Civ.P. 37(b)(2)(A).
 
 
 26
 The seventy-eight refund cases represent all refunds paid in a quarter. In forty-six instances refunds were miscalculated; an error rate of almost sixty percent. There is also evidence in the summary judgment record that the Federal Office of Child Support Enforcement determined in an audit that the Philadelphia Family Court holds substantial sums. Out of 343 AFDC support accounts with money on hold, ninety-six had been on hold for more than a year. Given the large percentage of miscalculations in the seventy-eight cases on which evidence was submitted, the evidence of failure to keep adequate records, the evidence of long delays in disbursements disclosed in the federal audit, and the defendants' failure to comply with discovery orders, we must hold that the class representatives came forward with a prima facie case suggesting the violations of Subchapter IV-D and its implementing regulations found by the district court. As the defendants acknowledge, there is no contrary evidence which puts that prima facie case in issue. Thus the liability judgment in favor of the class for violations of Subchapter IV-D and its implementing regulations must be affirmed.
 
 
 27
 The defendants also contend that the court erred in finding violations of the Due Process Clause of the fourteenth amendment. We have noted above that refund calculations contained errors in favor of the DPW in forty-six out of seventy-eight cases in which refunds were made. The defendants do not dispute that as a result of these mistakes DPW held on to class members' property. The district court concluded that this resulted in a taking of the class members' property without compensation. Moreover, the district court found, and the record supports the conclusion, that besides the miscalculations, other class members never received any refunds of child support payments to which they were entitled. Thus we reject the contention that the record does not support a finding that the defendants have committed a substantive fourteenth amendment violation by making uncompensated takings.
 
 
 28
 The class representatives sought a determination that procedural due process required that the defendants account periodically to all class members for child support payments collected. The district court ruled that an accounting was required. The defendants point out that in 1984, Congress amended Subchapter IV-D to require that states provide AFDC recipients with an annual accounting of support collected on their behalf. 42 U.S.C. Sec. 654(5); 45 C.F.R. Sec. 302.54 (1985). They point out, moreover, that as a part of a court-approved settlement of another lawsuit, Shenigo v. Cohen, No. 85-7221 (E.D.Pa. Feb. 10, 1986), the DPW has agreed to provide recipients with monthly accountings of support collected on their behalf. Thus, they contend, no further procedural due process should be required. The class representatives' procedural due process claim is, of course, a separate basis for potential liability. It is, however, closely related to the question of an appropriate remedy for the federal statutory and taking violations which we find. Thus it will be discussed in Part IV below.
 
 IV.
 
 29
 The class representatives contend that the district court's remedial order inadequately deals with the violations found, and must be modified. The defendants contend that assuming, as we have found, that violations occurred, the remedial order fairly addresses those violations. The scope of a remedial order is ordinarily committed to the informed discretion of the district court, and we review it for an abuse of that discretion. Equal Employment Opportunity Comm'n v. American Tel. & Tel. Co., 556 F.2d 167, 178 (3d Cir.1977), cert. denied, 438 U.S. 915, 98 S.Ct. 3145, 57 L.Ed.2d 1161 (1978). In exercising that function, we must "examine the decree in light of the record to see that the relief it affords is adequate to prevent recurrence of the illegality which brought on the given litigation." United States v. Loew's Inc., 371 U.S. 38, 52, 83 S.Ct. 97, 106, 9 L.Ed.2d 11 (1962). The decree must also make persons whole for past injuries suffered. Albermarle Paper Co. v. Moody, 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975). Thus our task is to determine whether the district court in fashioning the decree adequately took into account the need to prevent future violations, and the need to remedy past violations.
 
 
 30
 The district court ordered the defendants to adopt a new computer reassignment system which it was going to adopt in any event. The defendants are ordered to test the new system for a year and notify the class representative of the results. The order requires that notice of reassignment rights be attached to notices terminating or suspending AFDC assistance. The DPW is required to employ reassignment personnel, to create a reassignment telephone hotline, and to keep a computer terminal free for reassignment questions. DPW is also required to take specific steps to ensure that support payments after the assignment terminates and excess support payments prior to termination shall be refunded. Recognizing that collection of support payments is made by the Philadelphia Family Court on behalf of DPW, the order directs the defendants to use their "best efforts" to ensure that the Family Court complies with the order. The defendants are directed to correct the forty-six specific miscalculations of refunds reflected in the summary judgment record. They are also directed to send a monthly accounting to all persons whose support payments are sent to DPW. The accounting must include information on entitlement to refunds and on procedure for obtaining them. The DPW is required to provide instruction and training for personnel in the Office of Fraud Abuse in charge of support collections and refunds, but is required only to use its "best efforts" to ensure that Family Court personnel are properly instructed and trained. Finally, the order provides:
 
 
 31
 In the event that there are material changes in the governing federal statute or regulations, nothing in this Order shall be construed so as to prevent DPW from complying with them, or imposing on DPW a more stringent or restrictive requirement than the statute or regulations.
 
 
 32
 The class representatives contend that the decree is defective in six respects.
 
 
 33
 First, the class representatives contend that while the computer based reassignment system appears to be an adequate response to the reassignment violations found, it is not currently functioning. Electronic transmission of DPW computer tapes to the Family Court is not required until new equipment is in place, and no date is fixed for the installation of such equipment. Meanwhile the order requires that DPW mail the tapes to the Family Court daily. The class representatives proposed that a back-up paper reassignment system be implemented immediately, to function until the computer system is fully in place. They complain that the court order requiring reassignment by use of the mailed computer tapes is not being complied with. We conclude that the rejection of the class representatives' back-up paper reassignment system as a part of the remedy is within the permissible range of district court discretion in fashioning a remedy to prevent recurrence of the violations found. If the order as drawn is not being complied with, the appropriate remedy is a contempt proceeding.
 
 
 34
 Second, the class representatives contend that the decree does not contain provisions requiring the reassignment of support orders promptly following termination of assistance. The order requires that a computer tape be made of all case closings, for matching against support orders in the Family Court. Case closings include terminations of all family assistance. The class representatives point out that there are also partial terminations; a cut-off to one member of a household. Out of seventy-eight termination-refund cases examined, fourteen were such partial terminations. The problem of such partial terminations has been mitigated to a large extent by 1984 changes in the federal law, which now mandates that the income of an entire family be included for purposes of AFDC benefit determinations. 42 U.S.C. Sec. 602(a)(38). The class representatives claim that there still could be situations where one child is not the sibling of the other children in the house, and a partial termination could result. We think, however, that when read in light of the 1984 changes in the law and requirement in the decree for monthly accounting which includes a refund calculation, the decree is within the permissible range of district court discretion to fashion a remedy which will prevent recurrence of the violations found.
 
 
 35
 Third, the class representatives contend that by limiting to "best effort" the defendants' responsibility with respect to the performance of reassignment functions, the court has in effect relieved them of obligations imposed on them, and not the Family Court, by the governing federal law. Under that law, when the DPW delegates Subchapter IV-D functions to a local agency such as the Family Court, it remains accountable and responsible for the operation of the program, and must ensure that those functions are being carried out promptly, efficiently and effectively. 42 U.S.C. Sec. 654(7); 45 C.F.R. Secs. 302.12(2), (3). Given that responsibility, the class representatives urge, the district court erred in requiring that DPW only use "best efforts" to assure that its agent, the Family Court, complies with the law. This contention has merit. The decree should require that the persons in charge of DPW and its Office of Fraud and Abuse, which have contracted with the federal government to be responsible for compliance, shall see to it that their agent complies. See Kruelle v. New Castle County School Dist., 642 F.2d 687, 696-97 (3d Cir.1981).
 
 
 36
 Fourth, the class representatives contend that including the provision in the decree permitting the defendants to comply with future changes in federal law inconsistent with its provisions was an abuse of discretion. Arguably, that provision, quoted in Part III above, goes further in accommodating possible future changes in federal law than would be required under Fed.R.Civ.P. 60(b)(5) because of a change in the law. The order is also somewhat problematic in permitting the defendants to change their level of compliance without notice to the class representatives or consent of the court. See Fed.R.Civ.P. 60(b)(5). The district court was entitled, however, to recognize that DPW, acting through the defendants, has an ongoing contractual relationship with the federal government, which requires a degree of flexibility with respect to future developments. While the provision might well have been drafted in such a way as to put the onus on the defendants to seek modification, rather than on the class representatives to police defendants' behavior, we are unable to hold that the inclusion of the provision as drafted was an abuse of discretion.
 
 
 37
 Fifth, the class representatives contend that the monthly accounting to class members ordered by the district court is legally insufficient in that the required accounting will not inform recipients of the amount of public assistance rendered to the family during the month, and the calculation of how much support payments may be offset against those payments. The purpose of the monthly accounting, according to the district court, is to enable class members to initiate collection efforts in the event of illegal retention of their support payments. How, the class representatives ask, can class members do this if the monthly accounting does not include information about assistance payments, the amounts of which determine whether support payments may be retained by DPW? The district court's response to this contention is that "[r]ecipients should be able to keep a record of how much assistance they have received." 671 F.Supp. at 350. This is hardly a complete response to the class representatives' argument. It is true that the recipients receive, and therefore theoretically can remember the amount of assistance received. Thus, in theory, they can compare the monthly accounting of support payments collected with the amount of benefits received. Recipients must also know, however, the regulations as to when and to what extent offsets of support payments against AFDC assistance payments is permitted. Moreover, the defendants are required by federal law to make the calculations. Thus what the class representatives seek is information about a calculation which the defendants are obliged to make in any event.
 
 
 38
 In Ortiz v. Eichler, 794 F.2d 889, 893-94 (3d Cir.1986), this court considered what notice should be given by state agencies administering federal spending clause programs (AFDC, food stamps and Medicaid) before terminating such benefits. Applying the balancing of interests test required by Matthews v. Eldridge, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976), we held that the district court did not err in requiring that the agencies disclose their calculations. This case is different from Ortiz v. Eichler, in that here the district court did not order such disclosure in the notice. Ortiz v. Eichler did more than merely affirm the district court's exercise of discretion in fashioning a decree. The opinion cites approvingly Dilda v. Quern, 612 F.2d 1055, 1057 (7th Cir.) (per curiam), 447 U.S. 935, 100 S.Ct. 3039, 65 L.Ed.2d 1130 (1980), which holds that the failure of the court to include the state agency's calculations in an AFDC benefits termination notice violates procedural due process. Thus Ortiz v. Eichler controls with respect to the adequacy of notice unless a material distinction may be made for Matthews v. Eldridge purposes between retained support payments, on the one hand, and AFDC, food stamps, and Medicaid benefits, on the other. The interest of class members in third party child support payments is self-evident. It is not the wealthy who will have had to make assignments of such payments to obtain AFDC assistance. The burden on DPW, which must in any event make the calculations, is by comparison slight. The additional safeguard which would be provided by notice of the calculations against errors such as those disclosed in this record would be quite significant. No principled basis occurs to us for distinguishing Ortiz v. Eichler. The district court erred as a matter of law, therefore, in failing to require an accounting notice which includes the agency's calculations of support payments and AFDC assistance payments against which they are being offset.
 
 
 39
 The class representatives' sixth and final objection to the decree, and probably the most significant, is that, except for the forty-six identified cases of erroneous calculations as to which the court ordered payment, without interest, of withheld child support payments, the decree affords no remedy to class members for past takings of their property. The class representatives seek an order directing the defendants to audit their records and to identify the class members whose payments were wrongfully collected and retained. They also contend that interest should be paid on the forty-six claims of miscalculated refunds which were found. The district court opined that "[w]hile the Eleventh Amendment bars the payment of interest to plaintiffs, it certainly does not preclude the payment to plaintiffs of their money which the defendants withheld improperly." 671 F.Supp. at 349 (footnote omitted). The defendants acknowledge that "[t]he district court ... properly concluded that the miscalculated refunds should be corrected and, of course, they will be." Appellees' Brief p. 35. However, while they concede that these refunds must be paid, they urge that both the interest on the forty-six miscalculated refunds, and an audit to discover what other class members are owed refunds, are forms of relief barred by the Eleventh Amendment.
 
 
 40
 Several observations are required in order to put the Eleventh Amendment argument in perspective. First, this is a suit against state officers. The state is not a party. Thus there is no question that the district court had subject matter jurisdiction to entertain this federal question case. Ex Parte Young, 209 U.S. 123, 155-56, 28 S.Ct. 441, 452, 52 L.Ed. 714 (1908); United States Bank v. Planters' Bank of Georgia, 22 U.S. 904 (9 Wheat.) 6 L.Ed. 244 (1824). Second, this is not a case in which the class representatives are attempting to obtain, in an Ex Parte Young type action in federal court, relief against the state treasury pursuant to a state statute. See, e.g., Ford Motor Co. v. Dept. of Treasury, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945) (suit against Indiana Department of Treasury). Relief here is sought pursuant to 42 U.S.C. Sec. 1983. Third, this is not a case in which the class representatives seek recovery of money raised by the state through its general revenue sources. While the state's general revenues are utilized to pay the state's share (approximately half) of AFDC assistance payments, the monies in dispute here, unlike lawfully offset child support payments, are sums as to which the state never had any legitimate claim. The collected support payments here in dispute, because of the deficient operation of the Subchapter IV-D program by the state, were simply converted by the defendants and paid over to DPW. Fourth, the program which put the defendants in the position to collect and retain the child support payments was one which the state entered into voluntarily by contract with the United States, and the conversions violate the terms of that voluntary and legally binding undertaking.[2] Thus the issue presented is a narrow one: when state officials convert money or property which came into their hands in the course of administrating a federal spending program and turn that money over to the state, are the owners of such property constitutionally barred from any remedy against either the officers or the state. The defendants insist that the Eleventh Amendment requires an affirmative answer. And, if recovery is foreclosed, they urge, there should be no accounting.
 
 
 41
 In considering the defendants broad assertion of unameanability to a remedy for conversions which violate federal law, it is useful to consider first the question whether relief could be granted in any court, and then any separate limitations on the remedial powers of the federal courts imposed by the Eleventh Amendment.
 
 
 42
 It has been settled since Chicago, Burlington & Quincy R. Co. v. City of Chicago, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1896), that fourteenth amendment due process includes a substantive prohibition against state takings of private property without compensation equivalent to express prohibition in the Fifth Amendment against such takings by the federal government. It has also long been settled that a component of just compensation includes interest for the period during which compensation has been withheld. Kirby Forest Indus. v. United States, 467 U.S. 1, 11, 104 S.Ct. 2187, 2194, 81 L.Ed.2d 1 (1984); Phelps v. United States, 274 U.S. 341, 344, 47 S.Ct. 611, 612, 71 L.Ed. 1083 (1927); Seaboard Car Line Ry. v. United States, 261 U.S. 299, 305, 43 S.Ct. 354, 356, 67 L.Ed. 664 (1923); United States v. Rogers, 255 U.S. 163, 169, 41 S.Ct. 281, 282, 65 L.Ed. 566 (1923). We are hereby affirming the district court's holding that by collecting and retaining child support payments to which it is not entitled, DPW has taken property without compensation. Pennsylvania has had the use of the class members' property; they have been deprived of such use, and its obligation to pay compensation for such use includes an interest component. Section 1983 provides a federal cause of action for the vindication of substantive violations of the fourteenth amendment. State courts have concurrent jurisdiction with the federal courts over section 1983 actions. Maine v. Thiboutot, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). In such actions, they must also enforce 42 U.S.C. Sec. 1988 by awarding fees to the prevailing party. Id. Moreover, a state court could not decline to enforce this federal law cause of action for the recovery of just compensation. Testa v. Katt, 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947) (state courts of general jurisdiction are under constitutional obligation to enforce federal causes of action); Mondou v. New York New Haven & Hartford R.R. Co., 223 U.S. 1, 32 S.Ct. 169, 56 L.Ed. 327 (1912) (same); General Oil Co. v. Crain, 209 U.S. 211, 28 S.Ct. 475, 52 L.Ed. 754 (1908) (state courts must entertain suits against state officials for vindication of federal constitutional rights). In these and other cases on direct review the Supreme Court enforced the state courts' obligation to enforce federal law causes of action. See also Federal Energy Regulatory Comm'n v. Mississippi, 456 U.S. 742, 760, 102 S.Ct. 2126, 2138, 72 L.Ed.2d 532 (1982) (rejecting tenth amendment challenge to federal statute imposing adjudication duties on state tribunal). The Eleventh Amendment has no application to state courts. Thus it is plain that in a state court of general jurisdiction the class members could recover just compensation, including interest, for their property which the state has unlawfully retained.
 
 
 43
 It has also been settled since Osborn v. Bank of United States, 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824), and United States Bank v. Planters Bank of Georgia, 22 U.S. 904 (9 Wheat.), 6 L.Ed. 244 (1824), that the Eleventh Amendment is no bar to relief against state agents. While the Court in Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), rewrote the Eleventh Amendment in other respects, it shortly made clear that the rewriting did not change the settled law that federal courts could entertain suits against such agents. Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); Pennoyer v. McConnaughy, 140 U.S. 1, 11 S.Ct. 699, 35 L.Ed. 363 (1891). In this case, the class representatives have sued state agents, seeking, in the words of the complaint, an "[o]rder that the defendants pay to the plaintiffs all support monies [unlawfully withheld] including reasonable interest." The complaint makes no distinction respecting such relief against the defendants in their official capacities rather than individually. The defendants obviously so read the complaint, since they pleaded the defense of official immunity, a defense which only serves to insulate defendants from individual liability for damages. In moving for summary judgment the class representatives did not retreat from the relief requested in the complaint. In responding to that motion, the defendants presented no affidavits containing and we have found in the summary judgment record no materials suggesting that there is a factual basis for the affirmative defense of qualified official immunity. In the context of this case, such immunity would be available only upon a showing by the defendants that there was a reasonable doubt, at the time they acted, as to the DPW's entitlement to the retained funds. Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Thus it appears that the individual defendants might remain liable for conversions of property for which they were initially responsible, even though they turned the property over to their principal, the DPW. Restatement (Second) of Agency Sec. 349 (1958).
 
 
 44
 Keeping in mind that the state itself is liable to pay compensation, and that liability may be enforced in a state court, and that the state agents who converted the property may also be held liable even in a federal court, we turn to the DPW's objection to an accounting. That objection is predicated upon Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), in which the Supreme Court held that although suits against state officers could be entertained in the federal courts, the Eleventh Amendment prevented the remedy of an injunction requiring the payment of funds raised from general revenue sources out of the state treasury. The district court was, of course, bound by precedent. It was also bound, however, by the sequel to Edelman v. Jordan, in which the court approved as relief ancillary to a declaratory judgment, a notice to claimants advising them that a state procedure was available to which they might resort for the collection of past benefits. Quern v. Jordan, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). As was the case in Quern v. Jordan, though not in Green v. Mansour, 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985), there is here in place an injunction against continuing violations of federal statutory and constitutional law to which such notice type relief is properly ancillary. Thus even aside from the question of individual liability, there is a basis in law for requiring the DPW to audit its records in order to identify class members to whom notice of a potential recovery in state courts could be sent.[3] An audit for the purpose of identifying class members to whom the defendants may be individually liable is an a fortiori case.
 
 
 45
 The class representatives urge a broader proposition. They urge that Edelman v. Jordan should be construed as inapplicable to their suit because they are not seeking the recovery of entitlements to government benefits funded by general revenues, but only the recovery of their own property. The argument has the appeal of logic and consistency with the justifications sometimes advanced for the Hans v. Louisiana interpretation of the Eleventh Amendment. Neither logic nor consistency has been readily discernible, however, in the arcane jurisprudence of that constitutional provision, and we are unable to predict with any degree of confidence that a new day is dawning. Edelman v. Jordan, as we read it, prevents a federal court from requiring state officers to disgorge from the state treasury even unlawfully converted property, at least so long as the state pays for the disgorgement.
 
 
 46
 Alternatively, the class representatives urge that at the very least, a federal court may order statedisgorgement--retroactive relief--when such relief will be at the expense of the federal government, not the state. Here, although absent an accounting, we do not know the exact amounts involved, it is clear that decreases in child support payments retained by the state will result in increases in federal AFDC payments in the next quarter, in an amount of about fifty percent of the decreases. A number of courts, subsequent to Edelman v. Jordan, have acknowledged the validity of this distinction for Eleventh Amendment purposes. See Fernandez v. Chardon, 681 F.2d 42, 59 (1st Cir.1982), aff'd sub nom., Chardon v. Fumero Soto, 462 U.S. 650, 103 S.Ct. 2611, 77 L.Ed.2d 74 (1983); Wilson v. Lyng, 662 F.Supp. 1391, 1396 (E.D.N.C.1987), rev'd on other grounds, 856 F.2d 630 (4th Cir.1988); Cotton v. Mansour, 634 F.Supp. 1094, 1097-98 (E.D.Mich.1986); Collins v. Marshall, 507 F.Supp. 83, 85 (W.D.Mo.1981); Witter v. Pennsylvania Nat'l. Guard, 462 F.Supp. 299, 306 n. 9 (E.D.Pa.1978). The reasoning of these cases is consistent with the result reached by this court prior to Edelman v. Jordan in Carter v. Butz, 479 F.2d 1084 (3d Cir.), cert. denied, 414 U.S. 1103, 94 S.Ct. 737, 38 L.Ed.2d 559 (1973). We conclude that these authorities are sound. It is one thing for a state to insist that the Eleventh Amendment prevents retroactive relief which affects its fisc. It is quite another to insist that the state can confer an unwanted bonanza upon the United States by refusing to make an accounting and recover available funds from the federal treasury. Thus the court should have ordered retroactive relief against the DPW at least to the extent that DPW will be reimbursed by the United States.
 
 V.
 
 47
 The judgment of liability in favor of the class will be affirmed. The court's decree is inadequate in the respects we have noted. The case will, therefore, be remanded for the entry of a decree providing for additional relief consistent with this opinion.
 
 
 
 *
 Hon. Joseph Farnan, Jr., United States District Judge for the District of Delaware, sitting by designation
 
 
 [1]
 The complaint named as defendant, Helen O'Bannon, Mr. Adams' predecessor as Secretary of DPW. The docket entries do not disclose that any order was ever entered dismissing the complaint against O'Bannon
 
 
 [2]
 Approximately fifty percent of the withheld support payments, while nominally in the state treasury, actually inures to the benefit of the federal government, since its next quarter federal AFDC contribution will be reduced in proportion to child support payments collected by the state in the prior quarter. 42 U.S.C. Sec. 657(b)(2), (4)
 
 
 [3]
 Of course, the district court should not order an audit of the agency's records for claims which would be time-barred under the relevant statute of limitations if that affirmative defense is pleaded by the defendants