**Cesar MONZON**

**v.**

**Angela L. MARTINEZ, Esq., in Her Official Capacity as Chief Counsel, Delaware County Office of Child Support Enforcement, and Her Individual Capacity.**

**Civ. A. No. 92–4947.**

United States District Court, E.D. Pennsylvania.

Aug. 31, 1993.

Cesar Monzon, pro se.

Jeffrey P. Hoyle, Holsten & White, Media, PA, for Angela L. Martinez.

## MEMORANDUM OPINION AND ORDER

VANARTSDALEN, Senior District Judge.

The parties to this action have filed cross-motions for summary judgment. Because there is no genuine issue of material fact presented in this case, and, because plaintiff has failed to offer any credible evidence upon which a jury could reasonably return a judgment in his favor, defendant is entitled to judgment as a matter of law. Defendant's motion for summary judgment (filed Doc. No. 19 and Revised Doc. No. 20) will be granted and plaintiff's motion for summary judgment (filed Doc. No. 13) will be denied.

Plaintiff Cesar Monzon, proceeding *pro se*, brought this civil rights case based on 42 U.S.C. § 1983 against defendant Angela L. Martinez, Esq., in her official capacity as chief counsel, Delaware County Office of Child Support Enforcement (OCSE), and her individual capacity,[1] alleging a violation of Title IV–D of the Social Security Act, 42

1. It is unclear whether Ms. Martinez is the sole defendant or whether the defendants include, in addition to Ms. Martinez, the Commonwealth of Pennsylvania, the County of Delaware, and the County of Delaware's Office of Child Support Enforcement. (*Compare* Complaint's Caption *with* Complaint ¶ 10). Plaintiff's motion to serve process (attached to his complaint) identified only Ms. Martinez as a defendant. An appearance has been entered and answer filed only on behalf of Ms. Martinez. (*See Generally,* filed Doc. Nos. 3 and 4). Notwithstanding, the captions entitling the entry of appearance, the answer, plaintiff's motion for a temporary restraining order (filed Doc. No. 8; denied by Order Dated October 15, 1992, filed Doc. No. 9), and the majority of other documents filed in Civil Action 93–4749, contain the latin phrase "et al." or the word "defendants," indicating multiple defendants. Plaintiff's motion for a default judgment (rec'd. October 1, 1992, but not docketed), however, named in the caption (and sought judgment against) only Ms. Martinez.

Though I must liberally construe *pro se* complaints, *Zilich v. Lucht,* 981 F.2d 694, 695 (3d Cir.1992), fundamental principles of fairness and justice could not tolerate a reading so broad as to include a defendant neither named in the complaint nor duly served process. Consequently, the only defendant to this lawsuit is Ms. Martinez.

U.S.C. § 651 *et seq.* Plaintiff, a resident and citizen of the State of Delaware at the time he filed the complaint, (Complaint ¶ 2), alleges that pursuant to Title IV–D of the Social Security Act, he is entitled to seek and retain legal counsel of his choosing to represent him in all related child support matters, whether he appears as plaintiff or defendant in said matters, and, that Title IV–D requires the Delaware County (Pennsylvania) Office of Child Support Enforcement (OCSE) to pay for any and all legal expenses incurred. He seeks a declaratory judgment to that effect and a permanent injunction prohibiting defendant from pursuing any legal action against him unless and until the court determines his right to an attorney pursuant to Title IV–D of the Social Security Act. (*Id.* ¶ 10). For a variety of reasons, including allegations that plaintiff was not a resident of the State of Pennsylvania until late summer 1992; plaintiff misunderstands the impact of a "net effect" child support order; plaintiff never formally requested assistance from OCSE; and plaintiff never petitioned the state court challenging enforcement or modification of the child support order, defendant contends that no violation of Title IV–D occurred. From a policy viewpoint, defendant also asserts that forcing OCSE to pay for legal expenses in connection with defending an action brought against plaintiff for his own failure to pay court ordered child support grossly frustrates the letter and spirit of Title IV–D of the Social Security Act.

Subject matter jurisdiction is asserted under 28 U.S.C. §§ 1331, 1343, and 2001.[2]

Plaintiff is the custodial parent of one of three children born during his marriage to Mrs. Monzon which ended in divorce in 1988. (Complaint ¶ 3 and Exhibit C, at 28, 32, Attached to Def.'s Memo. Supp. Mot. Summ. J.). He alleges that in 1986, approximately two years before entry of the decree of divorce, Judge Wright of the Delaware County Court of Common Pleas entered an order awarding custody of the couples' daughter to plaintiff and custody of the couples' two sons to plaintiff's then wife. (Complaint ¶¶ 3, 5 and Exhibit C., at 32, Attached to Def.'s Memo.). An order determining child support obligations was also entered. This exact date is unclear from the record. Although neither plaintiff nor defendant attached a copy of the child support order to any document filed of record in Civil Action 92–4947, it is not disputed that the support order directed plaintiff to pay monthly child support to the mother who had been granted custody of two of the three children. Nor is it disputed that the support order contained no provision requiring the mother to pay support to plaintiff for the one child in his custody. By way of submitted affidavit, defendant explains that plaintiff is obligated to pay his former wife monthly child support, and not vice-versa, because the support order is a "net-effect" order.[3] (Exhibit D, ¶ 4, Attached to Def.'s Memo.).

Plaintiff, a native of Peru, holds an undergraduate degree in engineering and a master's and Ph.D. degree in electrical engineering. He is presently employed in the engineering field and makes approximately fifty-three thousand dollars per year. In comparison, his former wife speaks little English and has had a sporadic work history. (Exhibit C, at 27–28, 52–54, Attached to Def.'s Memo.).

According to plaintiff, he and his former wife have been in "constant litigation" for approximately six years, during which time OCSE provided his former wife with legal services, but provided him with no representation. (Complaint ¶¶ 4, 6). So far as the record informs, the "constant litigation" con-

2. Plaintiff also based jurisdiction on 28 U.S.C. § 1332. Probably the amount in controversy is not greater than the statutory minimum, $50,-000.00. Thus, jurisdiction could not properly be based on section 1332.

3. For example, assume that the court determined that plaintiff had to pay two-hundred dollars per month to his former wife for the support of the two children in her custody and she had to pay fifty dollars per month to plaintiff for support of the one child in his custody. The "net-effect" order would require plaintiff to pay one-hundred and fifty dollars per month to his former wife. She would not be required to pay him anything. Clearly, a "net-effect" order takes into consideration both custodial parents' support obligations. Plaintiff does not dispute by affidavit or otherwise that the court order took into account the "net-effect" of the custodial parents' support obligations.

sisted of divorce, custody, and support actions all initiated by plaintiff's former wife. (Def.'s Memo. at 2). It is not disputed that plaintiff was represented by privately retained counsel during the divorce, custody, and support proceedings. In connection with the support proceeding, defendant admits that OCSE provided legal representation to plaintiff's former wife "to assist her in enforcing [plaintiff's] Court ordered obligation to provide net child support payments for the children in her custody." (Def.'s Memo. at 3). During the "constant litigation" plaintiff was a resident and citizen of the State of Delaware.[4] At all times his former wife was a resident of the State of Pennsylvania.

Plaintiff recognizes that, due to an obvious conflict of interest, OCSE could not represent both plaintiff and his former wife in the same child support matter. Where a conflict of this nature arises, he believes that sections 651, 654(6)(A), and 655(a), read together, bestow unto him the statutory right to retain private counsel to represent him in support related matters and the right to have all legal expenses incurred paid by OCSE. To support this proposition, plaintiff cites *Carter v. Morrow,* 526 F.Supp. 1225 (W.D.N.C. 1981), and, a motion filed and order entered by the Family Court of the State of Delaware, New Castle County, in *Booth v. McKay,* No. 89-6188 (Del.Fam.Ct. July 7, 1991) (copy thereof Attached to Complaint).

Title IV-A of the Social Security Act, also known as the Aid to Families with Dependent Children program (AFDC), is a welfare program for poor families deprived of support of one parent due to that parent's absence, death, or incapacity. 42 U.S.C. 601 *et seq.* "AFDC provides [federal] funds to state programs giving financial assistance to needy families with dependent children." *Commw. of Pa. Dept. of Public Welfare v. Markiewicz,* 930 F.2d 262, 262 (3d Cir.1991). This federal spending program is a matching funds program designed to stimulate state aid and service to AFDC recipients. *Bennett v. White,* 865 F.2d 1395, 1398 (3d Cir.), *cert. denied,* 492 U.S. 920, 109 S.Ct. 3247, 106 L.Ed.2d 593 (1989). States desiring AFDC funds must submit a plan to the Secretary of Health and Human Services (Secretary) describing the manner in which the state will administer the federal funds. 42 U.S.C. § 601. Submitted plans must be approved by the Secretary before the state can receive federal funds. *Id.* § 602(b). The plan must conform with the panoply of requirements listed in section 602(a). The Secretary may withhold or reduce federal matching funds if a plan fails to comply with any requirement. *Id.* §§ 603, 604. An approved plan must be in effect in all political subdivisions of the state, and must provide for entering into cooperative arrangements with appropriate courts and law enforcement officials. *Id.* § 654.

Pennsylvania participates in the federal AFDC program. *See Bennett,* 865 F.2d at 1398. Defendant furnished the court with a copy of the cooperative agreement entered into by the Pennsylvania Department of Public Welfare and the Domestic Relations Section of the Court of Common Pleas and County Commissioners of Delaware County. (Exhibit F, Attached to Def.'s Memo.). The specific AFDC requirement relevant to the present case is listed in 42 U.S.C. § 602(a)(27). That section requires all participating states, including the State of Pennsylvania, to establish and operate a child support enforcement program under Title IV-D of the Social Security Act. *See* 42 U.S.C. §§ 602(a)(27) and 651 *et seq.* The purposes of Title IV-D, the Child Support Enforcement Act, include:

> enforcing the support obligations owed by absent parents to their children and the spouse (or former spouse with whom such children are living), locating absent parents, establishing paternity, obtaining child and spousal support, and assuring that assistance in obtaining support will be available ... to all children ... for whom such assistance is requested.

*Id.* § 651. These child support enforcement services must be made available to "any individual not otherwise eligible for such services

4. Plaintiff resided in the State of Delaware from mid-1986 through late 1992. (Exhibit E, at No. 12, Attached to Def.'s Memo.). On August 8, 1992, the date on which plaintiff commenced this lawsuit, he resided in the State of Delaware. (Complaint ¶ 2).

upon application filed by such individual with the State." *Id.* § 654(6)(A).

Plaintiff interprets sections 651 and 654(6)(A) of Title IV–D as granting him a statutory entitlement to free legal services in connection with any child support matter solely because he is the custodial parent of one of his three children.[5] According to plaintiff, whether he is in immediate need of any Title IV–D service, such as locating an absent parent, determining parenthood, establishing support obligations, and/or enforcing existing support obligations, is completely irrelevant. As evident by the following questions and answers given during the taking of plaintiff's deposition, it appears that plaintiff believes he is entitled to have an attorney appointed to represent him even in the absence of a genuine dispute regarding the existing child support order:

Q: Do you dispute that because your wife has two of the children and you only have one that you should be paying her money for supporting those two children?

A: I refuse to answer that question. It's not relevant.

Q: What are the disputes that you have concerning the amount of money that you're paying or the fact that you're paying support?

A: I refuse to answer. The disputes are not relevant to this [matter].

Q: You're asking for an attorney to protect your rights in—in the support differences of opinion you have with your wife. But yet you won't even tell us what differences—

A: Difference of opinion I have?

Q: Yeah, you're—you're contesting support or the amount, correct?

A: I want the law to be enforced. I'm entitled to an attorney and that's the way it should be.

Q: So is it for no other reason than—than the fact that you think you're entitled to one, is that the sole basis of you Complaint?

A: I—I refuse to answer. That's not—that's not relevant.

Q: I'm asking you, is there a case or controversy between you and your wife concerning support or the amount of support at the present time?

A: Whatever difference I have with my wife, have nothing to do with this. I refuse to answer. That's not relevant.

Q: Do you agree with me that the only reason that you would be entitled to an attorney to—to represent you is because there's a dispute concerning support between you and your wife?

A: Whatever—no, I don't agree with you.

* * * * * *

Q: Do you agree that there has to first be an action or—or petition or request for support before you're entitled to an attorney?

A: No.

Q: Well, you agree that you have to—there has to be more than just your request. But you're saying there doesn't have to be a—

A: The facts, of course. I am a custodial parent.

(Exhibit C, at 64–66, Attached Def.'s Memo.).

Section 1983 authorizes suits against those acting under color of state law for violations of federal law and for violations of the United States Constitution. *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). However, there are two situations in which the Supreme Court has determined that a section 1983 action based upon violation of a federal statute may not be brought: (1) if the statute does not create enforceable rights in the plaintiff, *Pennhurst State Sch. & Hosp. v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981); and (2) if Congress has foreclosed private enforcement in the enactment of the statute. *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). In the present case, plaintiff bases his entire claim

5. Plaintiff also relies on section 655(a) of Title IV–D which sets forth guidelines pursuant to which the Secretary shall disburse funds to participating AFDC states. *See* 42 U.S.C. § 655(a). Plaintiff has failed to demonstrate how section 655(a) entitles him to free legal representation for all future, yet unknown, lawsuits.

solely on an alleged statutory violation.[6] Thus, it must be determined whether plaintiff has an enforceable right under Title IV–D and, if so, whether Congress intended to foreclose private enforcement.

Several courts have held that custodial parents in immediate need of Title IV–D services, whether or not AFDC-recipients, have enforceable rights under the statute. *See Carelli v. Howser,* 923 F.2d 1208, 1211 (6th Cir.1991) ("[P]laintiffs here are beneficiaries in fact of Title IV–D and were intended by Congress to be such."); *see also, Howe v. Ellenbecker,* 774 F.Supp. 1224, 1230 (D.S.D.1991) ("[T]itle IV–D of the Social Security Act does create an enforceable right in plaintiffs"); *Beasley v. Ginsberg,* No. CIV. A.H–86–619, 1989 WL 202144 (D.Conn. Oct. 2, 1989); *but see, Wehunt v. Ledbetter,* 875 F.2d 1558 (11th Cir.1989) (per curium), *cert. denied,* 494 U.S. 1027, 110 S.Ct. 1472, 108 L.Ed.2d 609 (1990).[7] The only commonality between the plaintiff in the present case and the plaintiffs *Carelli, Howe,* and *Beasley,* is that they are all custodial parents of minor children. The plaintiffs in *Carelli* and its progeny, however, all asserted some immediate need for child support IV–D services. For example, some of those plaintiffs were in search of an absent parent from whom they would eventually seek collection of child support. Others sought to determine paternity. Still others fought to establish and/or enforce court ordered support obligations.

In the present case, the record fails to establish that plaintiff ever needed or presently needs child support enforcement services. The record fails to establish any ongoing child support litigation between plaintiff and his former wife. It is clear that plaintiff is not in search of an absent parent; nor is parenthood at issue. Child support obligations have been established for many years, and, as far as the record informs, the net-effect order remains in effect today. Excepting the period of time that plaintiff himself failed to make payments pursuant to the net-effect order, it appears that the net-effect order has always been enforced. Though he may not understand the mechanics of the net-effect support order, plaintiff has admitted that **"the amount of [support] money per child is not in dispute since it is given by either the guidelines** [*see* 23 Pa.Cons. Stat.Ann. § 4322 (Purdon 1991)] **or Melzer** [*see Melzer v. Witsberger,* 480 A.2d 991 (Pa. 1984)] **which I find reasonable."** (Exhibit E, at No. 51, Attached to Def.'s Memo.) (emphasis added). His acceptance of the reasonableness of the net-effect order is buttressed by the fact that he openly acknowledges financial responsibility for the two children in the custody of his former wife, (Exhibit E, at No. 48, Attached Def.'s Memo.), and by the fact that he apparently never challenged the support order in the state court.

In sum, plaintiff has not shown that he needs any child support enforcement assistance from OCSE. No single provision (or combination of provisions) of Title IV–D of the Social Security Act expressly or impliedly suggests that solely on the basis of being a custodial parent, said individual will be entitled to an attorney to represent him in all related support hearings. Legal representation is authorized in connection with providing one or more of the child support enforce-

6. Although not stated in the complaint, plaintiff alleged in a written answer to a question posed to him during his deposition: "I believe I am entitled to [legal] representation as a matter of Federal Law in view of the provisions of the Social Security Act, and also believe that my civil rights and those of my daughter have been violated. I believe I have been discriminated on the basis of sex." (Exhibit E, at No. 48, Attached to Def.'s Memo.). It is conceivable that plaintiff intended to raise an equal protection issue under the Fourteenth Amendment. However, the record is devoid of any additional facts and/or other allegations with regard to alleged discrimination based on sex. This isolated and conclusory statement is insufficient to support a section 1983 claim based on an alleged violation plaintiff's Fourteenth Amendment right to equal protection of the law.

7. *Wehunt, supra,* involved several AFDC-recipient plaintiffs who alleged that the Georgia Department of Human Resources failed to provide them Title IV–D service. That court affirmed the district court's dismissal on the basis that the AFDC recipient plaintiffs did not have enforceable rights under the statute. *Wehunt,* 875 F.2d at 1566. The intended beneficiary, according to that court, was the public fisc because the program was designed to reduce the number of persons on welfare.

ment services to a needy family. For example, after tracking down an absconded parent, an attorney may be needed for in-court proceedings to procure and/or enforce the payment of child support. Along those lines, even in the present case, legal services were provided to plaintiff's former wife (who was in need of child support when plaintiff stopped paying) to assist her in enforcing the court ordered child support.

Another critical difference between the present case and *Carelli, Howe,* and *Beasley* is that the plaintiffs in the latter cases all applied for, and had been denied, child support enforcement services. It was only after those plaintiffs had been allegedly wrongfully denied services that they brought suit in federal court. *See generally, Carelli,* 923 F.2d at 1209 (custodial mothers in need of locating absent fathers, determining paternity, establishing support obligations through court orders, and/or enforcing existing support orders applied for and allegedly were denied Title IV–D services wrongfully); *Howe,* 774 F.Supp. at 1226, 1228 (custodial mothers in need of Title IV–D benefits alleged that, based on their race, the defendants denied them services by refusing to prosecute absent fathers who lived on Indian reservations); *Beasley,* 1989 WL 202144, *1 (AFDC recipient families challenged the defendants' alleged illegal practices in connection with the child support pass-through provisions); *Wehunt,* 875 F.2d at 1561–62 (custodial mothers receiving AFDC benefits in need of Title IV–D services alleged that defendants failed to properly administer services of locating absent parents, determining paternity, and/or establishing and/or enforcing support obligations).

Section 654(6)(A) expressly states that services shall be available to any individual "upon application filed by such individual with the State." 42 U.S.C. § 654(6)(A). Subsection (6)(B) provides that "an application fee for furnishing such services shall be imposed, which shall be paid by the individual applying for such services." *Id.* § 654(6)(B). So far as the record informs, plaintiff never submitted a written application (nor paid the requisite application fee) with the appropriate OCSE requesting Title IV–D services. Plaintiff has provided no explanation justifying his complete failure to comply with the necessary and relatively effortless application process. Further, it is noteworthy that had plaintiff filed an application during the "constant litigation," because he was then a resident of the State of Delaware, he would have had to apply with a local OCSE in that state.[8]

Contra to plaintiff's belief, according to the statutory and case law, it appears that being a custodial parent in and of itself is not sufficient to entitle one to Title IV–D services. Standing alone, the mere status of being a custodial parent is inadequate to establish the right to have an attorney appointed to represent that parent for an infinite duration in any and all legal matters which may surface in connection with child support issues. At a minimum, to establish enforceable rights under the statute, a plaintiff must prove that he or she is in immediate need of child support enforcement services and that his or her properly filed application for assistance was wrongfully denied or services were otherwise wrongfully withheld. It is clear that the intended beneficiaries of Title IV–D are families in need of child support enforcement services. Plaintiff has not produced any credible evidence to show that he falls within the realm of the intended beneficiaries. To the contrary, the record discloses that plaintiff already has a support order which has been enforced for a number of years. The statute was not designed to provide free legal assistance to a person, like plaintiff, who has reaped the benefits of a support order for a number of years and who never even applied for Title IV–D services. This particular plaintiff, clearly not an intended beneficiary under the statute, has failed to establish an enforceable right under Title IV–D of the Social Security Act. Entry of summary judgment for defendants on this basis alone is appropriate.

Whether Congress intended to foreclose private action was not an issue raised nor argued by the parties and consequently not briefed. It is not "lightly concluded that

8. The local OCSE in the State of Delaware has not been named as defendant in this action.

Congress intended to preclude reliance on § 1983 as a remedy for the deprivation of a federally secured right." *Carelli,* 923 F.2d at 1212. No section within Title IV–D expressly forecloses private action. Thus, foreclosure of private enforcement will be found only if the statute itself creates a remedial scheme that is "sufficiently comprehensive ... to demonstrate congressional intent to preclude the remedy of suits under § 1983." *Id.* at 1212.

The defendant bears the burden of proving Congress' intent to foreclose private action. *Howe,* 774 F.Supp. at 1230; *see also Beasley,* 1989 WL 202144 *7 (defendants had affirmative burden of showing "an intent on the part of Congress in enacting Title IV–D to foreclose a remedy under § 1983, either by express language or by the existence of a comprehensive scheme for enforcement raising a clear inference that Congress intended such preclusion."). Where the defendant fails to satisfy this burden, the court may find that the plaintiff has standing under section 1983 to bring an action to enforce child support enforcement rights under Title IV–D of the Social Security Act.[9] *Howe,* 774 F.Supp. at 1230. In the present case, defendant has forwarded no evidence in an effort to persuade this court that Congress intended to foreclose private action. Thus, assuming plaintiff was able to clear the preliminarily barrier of establishing an enforceable right under the statute, plaintiff would appear to have standing in federal court.

Finding that a plaintiff has standing, however, does not alleviate a court's concern regarding judicial legislation. In *Howe, supra,* for example, the plaintiffs (who were found to have standing under section 1983) were custodial parents of children who had absent parents residing on Indian reservations within South Dakota. The parents living on the Indian reservations were not paying support. Administrators of the Title IV–D services flatly refused to prosecute absent parents living on reservations because of alleged jurisdictional defects. The plaintiffs claimed that the defendants denied child support enforcement services to them based on their race in violation of Title IV–D and the Fourteenth Amendment of the United States Constitution. The court essentially agreed with the plaintiffs, stating:

> Congress enacted Title IV–D for the purpose of "assuring that assistance in obtaining support will be available to all children...." 42 U.S.C.S. § 651 (1985). While this does not require defendants to take unreasonable steps to provide child support services to anyone, the Court finds that it does require defendants to provide equal services to children and families in like situations. Simply put, this Court cannot find that, in enacting Title IV–D, Congress intended to permit defendants to exclude a large percentage of Indian children from its benefits.

*Id.* at 1233–34. Notwithstanding, with regard to the manner in which Title IV–D services should be provided to the *Howe* plaintiffs, the court deferred to the Secretary, concluding:

> **It is not for this Court to determine how defendants will provide the Title IV–D services to plaintiffs.** Evidence presented at trial established that reasonable avenues exist for the provision of these services. Where these reasonable avenues exist, defendants must provide plaintiffs the services they are entitled to receive.

*Id.* at 1234 (emphasis added).

At most, plaintiff in the present action could obtain from a federal court a declaratory judgment defining his right to receive Title IV–D services; a federal court would not specifically decide how those Title IV–D services should be provided.[10] That

9. The United States Court of Appeals for the Sixth Circuit, after thoroughly reviewing the statute and its corresponding regulations, was "not convinced, however, that Congress intended the federal judiciary to occupy the same ground at the same time and in the same manner as the Secretary notwithstanding that the Secretary's corrective action might take longer." *Carelli,* 923 F.2d at 1216; *see also, Wehunt,* 875 F.2d at 1568 ("It is not the function of the judiciary to direct the Secretary in the fulfillment of his role as overseer of the [Title] IV–D program. Such could not have been the intent of Congress.").

10. In *Carelli, supra,* the plaintiffs sought no monetary relief; rather, like the plaintiff in the present case, the *Carelli* plaintiffs sought declaratory and injunctive relief. The court described their

would be for the Secretary to determine. The Secretary has not even been named a defendant to this action. In the administration of child support enforcement services, it is acceptable for a state to consider the expenses involved. Title IV–D does not "require that a state spend $100 [in enforcement efforts] to collect $50 ... [T]he mere fact that [a] plaintiff's support payments are delinquent does not necessarily mean the state is derelict in its obligations." *Carelli,* 923 F.2d at 1216–17 n. 13. Plaintiff in the present case appears to have suggested a method of carrying-out Title IV–D services without any regard to the expenses involved. The Secretary may find appropriate services far less financially draining than that which had been proposed by plaintiff. For example, if plaintiff needed legal assistance to enforce the support order (though no evidence to this effect has been offered by either party) the Secretary or OCSE might be able to connect plaintiff with a local law university's clinical program.[11] Other reasonable avenues of assistance not herein stated which fall short of the relief requested might also be available.

Finally, plaintiff misplaces reliance on *Carter v. Morrow,* 526 F.Supp. 1225 (W.D.N.C. 1981), and the order entered by a family court in *Booth v. McKay,* No. 89–6188 (Del. Fam.Ct. July 10, 1991). In light of numerous and significant factual discrepancies, *Carter,* and *Booth, supra,* are both easily distinguishable from the present case. In *Carter:* (1) the plaintiffs all applied for Title IV–D services; (2) their applications were denied solely on the basis that they did not receive AFDC; (3) each plaintiff was "in immediate need of child support payments from absent fathers"; (4) each plaintiff had been "unable to secure adequate support through their own efforts"; (5) the defendants included the Secretary of the North Carolina Department of Human Resources, the Director of the North Carolina Division of Social Services, and the Section Chief of the Child Support Enforcement Agency; and (6) local Title IV–D services did not include "in-court legal services to non-recipients, although such services [were] provided to AFDC recipients." *Carter,* 526 F.Supp. at 1226. None of these events arise in the present case. *Carter* did not hold, as plaintiff would have this court believe, that any and all custodial parents, based on that status alone, are entitled to free legal representation for an infinite period of time. Rather, *Carter* concluded that non–AFDC recipient custodial-parents in immediate need of support payments, who had applied for assistance (but had been rejected solely on the basis that they did not receive AFDC funds), are entitled to Title IV–D services, which may include in-court legal representation. *Carter,* 526 F.Supp. at 1226.

*Booth, supra,* is even less availing to plaintiff than *Carter.* It is a one sentence order entered by a master in the family court of the State of Delaware. *Booth* is not binding on a federal court. It contains no analysis of the applicability and meaning of Title IV–D of the Social Security Act. Moreover, unlike the present case, the divorced parents in *Booth* had "joint, shared-time custody of their [two] children." (*See* Mot. for Appointment of Counsel ¶ 1, Attached to Complaint). Both parents also applied with the local OCSE for assistance in the establishment and enforcement of child support. (*Id.* ¶ 2). Mr. Booth, unlike plaintiff here, brought a support action against his former wife. (*Id.* ¶ 3). The OCSE was then representing his former wife and could not also represent him. Mr. Booth found an attorney who was willing to prosecute the support action on Mr. Booth's behalf. (*Id.* ¶ 5). The OCSE agreed to pay for the expenses incurred for the prosecution. (*Id.* at 3). The family court entered an order appointing the willing attorney to represent Mr. Booth, but only in the pending litigation. That order also provided that the attorney's expenses would be paid by OCSE, as agreed. (See Order in *Booth v. McKay,* No. 89–6188 (Del.Fam.Ct. July 10, 1991), Attached to Complaint). None of the

relief as being more in the nature of a mandamus. As between injunctive and mandatory relief, that court noted "the mandamus standard is the more stringent one and requires extraordinary circumstances for the writ to issue." *Carelli,* 923 F.2d at 1216 n. 13.

11. "Once Plaintiff initiated the instant lawsuit the Office of Support Enforcement withdrew from its representation of the former Mrs. Monzon who then obtained representation for the Pennsylvania Civil Law clinic of the Widener University School of Law." (Def.'s Memo. at 2).

*Booth* facts surface in the present case. *Booth* is not persuasive nor authoritative.

In sum, this case appears to have been hastily filed by plaintiff after a quick glance at a few provisions of Title IV–D of the Social Security Act and certainly without any probing into the operation, applicability, reach, and/or meaning of the statute. Plaintiff has not produced any evidence showing that he submitted an application with the appropriate OCSE before rushing into federal court where he seeks declaratory and injunctive relief. Nor has he produced any evidence to establish that he is an intended beneficiary under the statute. He does not need to locate an absent spouse, establish parenthood, determine child support obligations, and/or enforce child support obligations. Even if he could overcome these obstacles, any favorable ruling would be limited to a declaratory judgment entitling plaintiff only to the right to receive Title IV–D services. Determining the proper means to administer child support enforcement services is better left with Title IV–D overseer, the Secretary, than with the court. In light of all of the serious defects discussed above, I conclude that plaintiff has failed to state a cognizable section 1983 claim. Defendant's motion for summary judgment (filed Doc. No. 19 and Revised Doc. No. 20) will be granted and plaintiff's motion for summary judgment (filed Doc. No. 13) will be denied.