Ronald J. SMOLOW, Individually and on behalf of all persons and entities similarly situated, Plaintiff,

v.

Barbara HAFER, Treasurer of the Commonwealth of Pennsylvania, Defendant.

Civil Action No. 04–941.

United States District Court, E.D. Pennsylvania.

Jan. 24, 2005.

Ann M. Caldwell, Caldwell Law Office LLC, Philadelphia, PA, for Plaintiff.

## *MEMORANDUM AND ORDER*

### *MEMORANDUM*

DUBOIS, District Judge.

## I. BACKGROUND

Plaintiff filed this class action against Barbara Hafer, Treasurer of the Commonwealth of Pennsylvania, for failing to pay him interest allegedly earned upon his mistakenly confiscated property. In his Amended Class Action Complaint, plaintiff alleges state statutory, common law and constitutional claims, and federal constitutional claims.

Presently before the Court is Defendant's Motion to Dismiss the Amended Complaint. For the reasons set forth below, the Court grants defendant's Motion to Dismiss with respect to plaintiff's state law claims and request for restitution, without prejudice to plaintiff's right to proceed in state court on such state claims and the claim for restitution based on state law. The Court denies defendant's Motion with respect to plaintiff's federal claims and request for prospective relief on the basis of federal law. However, the Court abstains from adjudicating these surviving federal claims pursuant to the doctrine announced in *R.R. Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

## II. FACTS

Plaintiff, owner of 300 shares of common stock in Parker Drilling Company ("Parker Stock"), alleges that Parker's agent mistakenly cancelled his stock and delivered it to the Treasury Department of Pennsylvania (the "Treasury") pursuant to the Disposition of Abandoned and Unclaimed Property Act ("DAUPA"), 72 Pa C.S. § 1301.1 et seq. (Am.Compl.¶¶ 7–9). Defendant Hafer, as Treasurer of the Commonwealth, converted this stock into cash. (*Id.* at ¶ 9). Plaintiff avers that defendant used this sum and interest earned upon it for public purposes. (*Id.* at ¶ 10). Upon plaintiff's request, defendant returned the amount the Treasury received from the stock sale, $586.47, but refused to pay plaintiff interest earned on the proceeds of the sale, estimated by plaintiff to be approximately $30.00, pursuant to the DAUPA, 72 Pa.C.S. § 1301.15.[1] (*Id.* at ¶¶ 12–16).

Plaintiff filed this class action on March 3, 2004. In an Amended Class Action Complaint against defendant in her official capacity filed on May 11, 2004, plaintiff alleged: (1) violation of the DAUPA, and unlawful taking without just compensation under the Fifth and Fourteenth Amendments of the U.S. Constitution pursuant to 42 U.S.C. § 1983 (Count I); (2) to the extent the DAUPA does not require payment of interest, the statute and defendant's enforcement of the statute violated plaintiff's substantive and procedural due process rights under the Fifth and Fourteenth Amendments of the U.S. Constitution pursuant to 42 U.S.C. § 1983 (Count II); (3) denial of substantive and procedural due process, and taking without just compensation, under the Constitution of Pennsylvania (Count III); (4) unjust enrichment (Count IV); and (5) breach of fiduciary duty (Count V). Plaintiff claims supplemental jurisdiction over his state law claims under 28 U.S.C. § 1367. (Am. Compl.¶ 5).

In Count VI, plaintiff requests various forms of relief. He asks the Court to declare the relevant provisions of the DAUPA unconstitutional to the extent they do not require payment of interest, enjoin the defendant from continuing to enforce the Act in this manner, and award him restitution for the unpaid interest. (*Id.* at ¶ 51). In the alternative to restitution, plaintiff requests that defendant provide an accounting to all class members of unpaid interest and benefits derived therefrom, and implement a procedure for reimbursement. (*Id.*). Plaintiff also seeks attorneys' fees. (*Id.*).

On March 8, 2004, five days after filing the federal action, plaintiff filed a class action against defendant in the Commonwealth Court of Pennsylvania on virtually identical federal and state grounds. *See*

---

1. 72 Pa.C.S. § 1301.15 provides, "When property is paid or delivered to the State Treasurer under this article, the owner is entitled to receive income or other increments actually received by the State Treasurer."

*Smolow v. Hafer* (Pa. Commw. Ct., Docket No. 208 MD 2004). On May 20, 2004, the Treasury offered to pay plaintiff $30.00 to compensate for the lost interest. Plaintiff has not accepted that offer. (Motion to Dismiss at 3).

In the Motion to Dismiss, defendant argues that: (1) defendant mooted plaintiff's claims and the putative class' claims by offering to pay plaintiff the claimed interest, requiring dismissal under Federal Rule of Civil Procedure 12(b)(1); (2) the Eleventh Amendment limits plaintiff's federal claims to those for prospective relief and bars his state claims entirely; (3) plaintiff failed to state a claim upon which relief can be granted under the Takings or Due Process Clauses of the U.S. Constitution because he did not specifically plead that he suffered a net loss; and (4) the Court should abstain from adjudicating plaintiff's claims under *Younger v. Harris,* 401 U.S. 37 (1980), on the ground that plaintiff filed a similar class action which is pending in state court. The Court addresses these issues in the order in which they were raised by defendant.

## III. STANDARDS OF REVIEW

### A. Rule 12(b)(1)

Defendant argues that plaintiff's claims should be dismissed as moot pursuant to Federal Rule of Civil Procedure 12(b)(1). The Court will also treat defendant's Eleventh Amendment defenses as made pursuant to Rule 12(b)(1).[2] *See Blanciak v. Allegheny Ludlum Corp.,* 77 F.3d 690, 694 n. 2 (3d 1996) ("[T]he Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction ... Accordingly, the motion may properly be considered a motion to dismiss the complaint for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1).").

*See also Douris v. Office of Pennsylvania Atty. Gen.,* 2004 WL 287112, *1 (E.D.Pa. Jan. 22, 2004).

 Challenges to subject matter jurisdiction can be either "facial" or "factual." *See Mortensen v. First Fed. Sav. and Loan Assoc.,* 549 F.2d 884, 891 (3d Cir. 1977). In a facial attack, a defendant argues that the plaintiff did not properly plead jurisdiction, and the Court must consider the allegations in the complaint as true. *Id.* However, a "factual" attack asserts that jurisdiction is lacking on the basis of facts outside of the pleadings, and it invokes the Court's authority to consider any affidavits and other evidence submitted. *Id.* For both categories of attack, a plaintiff has the burden of proving jurisdiction. *Id.*

In this case, defendant's Eleventh Amendment defenses constitute a facial challenge to the sufficiency plaintiff's jurisdictional allegations in the Amended Complaint. Defendant's mootness argument relies upon facts not included in the Amended Complaint (i.e., defendant's offer to pay plaintiff his claimed interest) and is therefore a factual challenge to jurisdiction.

### B. Rule 12(b)(6)

Defendant argues that in failing to plead net loss as part of his Takings and Due Process Clause claims under the U.S. Constitution, plaintiff "fail[ed] to state a claim upon which relief can be granted" pursuant to Federal Rule of Civil Procedure 12(b)(6). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59

---

**2.** Plaintiff's Motion cites both Rules 12(b)(1) and 12(b)(6) without specifying under which

he included his Eleventh Amendment defenses.

(1984). Moreover, "[f]or the purposes of a motion to dismiss, the material allegations of the complaint are taken as admitted." *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969).

## IV. DISCUSSION

### A. Mootness

■ Defendant first argues that plaintiff's claims are mooted by defendant's offer to pay him his estimated interest of $30.00. (Motion to Dismiss at 3–5). Further, it argues that plaintiff's class claims are mooted along with his individual claims because he has not yet moved for class certification. (Def. Reply at 3).

■ Regardless of whether defendant's offer mooted plaintiff's individual action, the Third Circuit has recently held that, following the filing of a class complaint and prior to moving for certification, a defendant cannot render class claims moot by offering the named plaintiff the full amount of his individual claim. *Weiss v. Regal Collections,* 385 F.3d 337 (3d Cir. 2004). In *Weiss,* the plaintiff consumer filed a class action under the Fair Debt Collection Practices Act ("FDCPA") against the defendants on behalf of a putative class. *Id.* at 339–40. Before plaintiff moved for certification, defendants made a Rule 68 offer of judgment to the named plaintiff for the maximum statutory damages an individual could recover under the FDCPA, which the plaintiff refused. *Id.* Defendants did not make a Rule 68 offer of judgment to other members of plaintiff's putative class. *Id.* at 342. Because defendants' Rule 68 offer of judgment provided no relief to plaintiff's putative class, the court only addressed the mootness issue with respect to the class claims, and did not rule on this issue with respect to plaintiff's individual claims. *Id.See also id.* at 347 ("The mootness exception recognizes that . . . it is necessary to conceive of the named plaintiff as a part of an indivisible class and not merely a single adverse party even before the class certification question has been decided.").

In the context of plaintiff's class claims, the court in *Weiss* held that, although defendants' offer provided the named plaintiff with all of the relief to which he was entitled (given that it equaled the statutory maximum and the FDCPA did not permit the plaintiff to seek prospective relief), it did not moot his class action. *Id.* at 347–49. The court held it would permit the class to proceed and "relate the certification motion back to the filing of the class complaint." *Id.* at 347–49. It found that,

> [a]lthough [plaintiff's] claims here are not inherently transitory as a result of being time sensitive, they are acutely susceptible to mootness, in light of defendants' tactic of picking off lead plaintiffs with a Rule 68 offer to avoid a class action. As noted, this tactic may deprive a representative plaintiff the opportunity to timely bring a class certification motion, and also may deny the court a reasonable opportunity to rule on the motion.

*Id.* at 347 (internal quotations and citations omitted).

Like the named plaintiff in *Weiss,* plaintiff in this case has filed a class complaint and refused defendant's offer to settle his individual claim. Therefore, under the rule announced in *Weiss,* 385 F.3d at 347–49, this Court will allow the plaintiff to maintain this class action, and to move for certification on behalf of the putative class, regardless of whether defendant's offer to pay him interest mooted his individual claim. Moreover, like the court in *Weiss,* this Court will only address the mootness issue with respect to plaintiff's class claims. It need not address the mootness issue with respect to plaintiff's individual claims at this time. *Id.* at 342, 347. Thus,

the Motion to Dismiss on mootness grounds is denied.

## B. Eleventh Amendment Immunity

■ In its Motion, defendant argues that the Eleventh Amendment limits plaintiff to claims for prospective relief against defendant for ongoing violations of federal law, thereby barring plaintiff's request for restitution and adjudication of his state law claims.[3] (Motion to Dismiss at 6–9). The Court now addresses these defenses.

### 1. Permissible Claims and Remedies under *Ex Parte Young*

### (a) Plaintiff's Request for an Injunction, Declaratory Relief and an Accounting

■ Under the Eleventh Amendment,[4] "nonconsenting States may not be sued by private individuals in federal court." *Bd. of Trs. of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). However, under the doctrine arising from *Ex Parte Young*, the Eleventh Amendment does not bar a plaintiff from seeking prospective relief—typically injunctive and declaratory relief—in federal court against a state official for ongoing violations of federal law. *See Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Moreover, the Court in *Quern* held that "ancillary" to declaratory judg-

ment, a federal court can order a state official to provide notice to members of a class informing them of state procedures for collecting back welfare payments. 440 U.S. at 349, 99 S.Ct. 1139. Relying on the permissibility of these notices in *Quern*, the Third Circuit has held that a court may order state officials, ancillary to a notice order, to audit their records to identify class members "to whom notice of a potential recovery in state courts could be sent." *Bennett v. White*, 865 F.2d 1395, 1407 (3d Cir.1989).

The Court concludes that, under *Ex Parte Young*, the Eleventh Amendment does not bar plaintiff from seeking declaratory judgment or an injunction on the basis of his federal claims. Nor does it bar plaintiff from proceeding with his request for an accounting, subject to the limitations announced in *Bennett*, to identify class members potentially qualified to recover lost interest in state proceedings. 865 F.2d at 1407. For this reason the Motion to Dismiss on this ground is denied.

### (b) Restitution

■ Plaintiff also requests restitution, arguing that, consistent with *Ex Parte Young*, he may recover his interest unlawfully held by the state. (Pl. Opp. at 18). However, the Court's holding in *Ex Parte Young* bars plaintiffs from seeking retroactive relief, particularly in the form

---

3. The Court notes that, in asserting sovereign immunity with regard to plaintiff's state claims under *Pennhurst*, defendant's Motion to Dismiss specifically addresses only plaintiff's state claims in Count I of the Amended Complaint and not the state law claims in Counts III, IV, and V. (Motion to Dismiss at 8–9). As detailed below, plaintiff argues that defendant waived this defense with regard to these three counts as a result.

4. The Eleventh Amendment states that, "[t]he Judicial power of the United States shall not

be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Constitution, Amendment XI. "Although by its terms the Amendment applies only to suits against a State by citizens of another State, [the Supreme Court has] extended the Amendment's applicability to suits by citizens against their own States." *Bd. of Trs. of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001)

of damages drawn from the state treasury. *See Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). In *Edelman,* the Court specifically rejected the argument that plaintiffs could recover retroactive, unlawfully held welfare payments under the guise of "equitable restitution." *Id.* at 665–66, 94 S.Ct. 1347. In so doing, the Court emphasized it "[did] not read [*Ex parte Young*] or subsequent holdings of this Court to indicate that any form of relief may be awarded against a state officer, no matter how closely it may in practice resemble a money judgment payable out of the state treasury, so long as the relief may be labeled equitable in nature. The Court's opinion in [*Ex Parte Young*] hewed to no such line." *Id.* at 667, 94 S.Ct. 1347 (internal quotations omitted). Further, the Third Circuit in *Bennett,* 865 F.2d at 1408, held that "[*Edelman v. Jordan*], as we read it, prevents a federal court from requiring state officers to disgorge from the state treasury even unlawfully converted property, at least so long as the state pays for the disgorgement." *Id.* Thus, the Court concludes that restitution from the state treasury is not permitted under applicable law and grants the Motion to Dismiss on this ground.

### 2. State Claims

#### (a) *Pennhurst* Generally

Plaintiff alleges state law violations in Counts I (violation of the DAUPA), III (violation of the takings and due process provisions of the Pennsylvania Constitution), IV (unjust enrichment), and V (breach of fiduciary duty). The Court dismisses all of these claims under the Eleventh Amendment bar announced in *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 105, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), without prejudice to the right of plaintiff to proceed with such claims in state court.

In *Pennhurst,* the Supreme Court held that, consistent with the Eleventh Amendment, a federal court may not grant "relief against state officials on the basis of state law, whether prospective or retroactive." *Id.* at 106, 104 S.Ct. 900. With regard to such claims, "neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment. A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." *Id.* at 121, 104 S.Ct. 900. Moreover, the exception announced in *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), permitting suits against state officials seeking prospective relief for violations of federal law, is "inapplicable in a suit against state officials on the basis of state law." *Id.See also Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess,* 297 F.3d 310, 325 (3d Cir.2002) ("Simply put, the Eleventh Amendment prohibits a federal court from considering a claim that a state official violated state law in carrying out his or her official responsibilities."); *Hayes v. Reed,* 1997 WL 379179, at *1 (E.D.Pa. July 2, 1997) (dismissing plaintiff's state law claims under *Pennhurst* ).

In response to the dictates of *Pennhurst,* plaintiff argues that: (1) defendant waived its sovereign immunity with respect to Counts III, IV, and V by only asserting an immunity defense under *Pennhurst* in opposition to plaintiff's Count I claim that defendant violated the DAUPA (Pl. Opp. at 20); and (2) plaintiff does not seek prospective relief under the DAUPA, but instead a federal ruling on the constitutionality of the DAUPA or, in the alternative, defendant's violation of Act—rulings not barred by *Pennhurst.* (*Id.* at 20–21).

#### (b) Waiver

Contrary to plaintiff's assertion, defendant did not waive its *Pennhurst* sov-

ereign immunity defense by failing to assert it with respect to Counts III, IV, and V. In *In re Hechinger Investment Company of Delaware, Inc.*, 335 F.3d 243 (3d Cir.2003), cited by plaintiff in arguing that defendant waived all non-asserted *Pennhurst* defenses, the Third Circuit held that "a defendant may raise the defense of sovereign immunity at any time in the absence of an explicit waiver." *Id.* at 251. Moreover, the court in *Baltimore County* merely held that "a federal court *need not* address the issue of sovereign immunity," where the parties fail to raise it. *Id.* at 249 (emphasis added). *See also Wisconsin Dept. of Corr. v. Schacht*, 524 U.S. 381, 389, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998) ("Nor need a court raise [sovereign immunity] on its own. Unless the State raises the matter, a court can ignore it."). Although the Court need not address the non-asserted sovereign immunity defenses to Counts III, IV, and V, it will do so in view of the fact that defendant has not explicitly waived that defense.

#### (c) Authority to Ascertain State Law

■ Plaintiff correctly argues that he presents federal questions, not barred by *Pennhurst*, as to whether the DAUPA or, alternatively, defendant's violation of the statute, violates plaintiff's rights under the U.S. Constitution. Although *Pennhurst* prevents this Court from ordering relief on the basis of the DAUPA itself, it does not bar the Court from construing these provisions for the purposes of ruling upon their constitutionality under the U.S. Constitution. In *Everett v. Schramm*, 772 F.2d 1114, 1119 (3d Cir.1985), the Third Circuit has held that *Pennhurst* does not bar a federal court from ascertaining state law for these purposes, ruling that:

> *Ascertaining* state law is a far cry from compelling state officials to comply with it ... [T]he ascertainment of state law is an everyday function of the federal court ... Indeed, § 1983 would be rendered

almost nugatory if federal courts are prohibited, by the [Eleventh Amendment], from deciding matters of state law in cases brought against state officials.

*Id.* (emphasis added). Moreover, other federal courts have expressly interpreted *Everett* to permit them to ascertain state law in order to rule on constitutional issues. *See Coalition of New Jersey Sportsmen v. Whitman*, 44 F.Supp.2d 666, 672 (D.N.J.1999) ("While the resolution of these constitutional issues necessarily requires this court to ascertain what state law means, this is a far cry from a prohibited [*Pennhurst*]-type action which seeks injunctive relief on the basis of state law."). *See also Ctr. for Disease Det., LLC v. Rullan*, 288 F.Supp.2d 136, 142 (D.P.R. 2003).

■ Under the Third Circuit's holding in *Everett*, the Eleventh Amendment does not preclude this Court from ascertaining whether the DAUPA requires the payment of interest in connection with a ruling on its constitutionality under federal law or, in the alternative, the constitutionality of defendant's violation of the Act. However, in the absence of settled state law, it is uncertain whether the DAUPA requires payment of interest. Given that determining the constitutionality of the DAUPA or the defendant's violation of the DAUPA would require this Court to ascertain an uncertain issue of state law, the Court concludes it should abstain from further proceedings under *Pullman* pending the state court's ruling on the statute, as discussed in Section IV.E. of this Memorandum.

#### C. Failure to Allege Net Loss

■ Defendant argues that plaintiff failed to state a Takings and Due Process Clause claim under the U.S. Constitution upon which relief may be granted, because

plaintiff did not specifically plead he suffered a net loss as a result of defendant's failure to pay him interest (or alternatively that the Treasury realized a $30 net gain). Defendant relies on *Brown v. Legal Foundation*, 538 U.S. 216, 123 S.Ct. 1406, 155 L.Ed.2d 376 (2003), in arguing that plaintiff must allege that he suffered a net loss or deprivation of a net gain to survive a motion to dismiss under Rule 12(b)(6).

In *Brown*, the Supreme Court held that "interest on lawyers' trust accounts" did not deny just compensation by withholding interest payments where the cost of investing the accounts to yield earnings would exceed any gain to the recipients. *Id.* at 240–41, 123 S.Ct. 1406. The Court affirmed the holding of the Court of Appeals that, "if the petitioner's net loss was zero, the compensation that is due is also zero." *Id.* at 237, 240–41, 123 S.Ct. 1406. However, in the brief period since *Brown*, at least one Circuit to consider this holding suggested that net loss is an issue requiring factual development more appropriate at post-dismissal stages of proceedings. *See McIntyre v. Bayer*, 339 F.3d 1097, 1102 (9th Cir.2003) (vacating grant of summary judgment and remanding the just compensation issue to district court where record remained undeveloped as to whether party suffered net loss).

This Court concludes that further factual development is required to determine whether the plaintiff in this matter suffered a net loss; it will not read *Brown* to require dismissal for plaintiff's failure to expressly aver deprivation of a net gain in his Amended Complaint. Consistent with his allegations, plaintiff may have suffered a net loss as a result of defendant's failure to pay interest. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)("A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the

allegations."). Therefore, viewing the well-pleaded facts in the light most favorable to the plaintiff, the Court denies defendant's Motion to Dismiss for failure to state a claim upon which relief can be granted on this ground.

## D. *Younger* Abstention

■ As noted above, plaintiff has filed a class action in the Commonwealth Court of Pennsylvania based upon almost identical federal and state claims. Nevertheless, this Court declines defendant's request to abstain from adjudicating the surviving federal claims for prospective relief under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1970), on the ground that plaintiff's state case is a remedial action which is insufficient to warrant *Younger* abstention.

In *Younger*, the Supreme Court held that a federal court could not enjoin state criminal proceedings enforcing state law on the ground that the underlying state law was unconstitutional. *Id.* at 41, 91 S.Ct. 746. *See also Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971)(holding that *Younger* applies to declaratory judgments). The Court soon expanded the *Younger* holding to prohibit federal injunctions of certain civil proceedings which were quasi-criminal or in aid of state courts' authority to enforce their orders. *See, e.g., Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (applying *Younger* to state nuisance proceedings); *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (applying *Younger* to contempt proceedings); *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (applying *Younger* to state civil enforcement proceedings to recover fraudulently-obtained welfare payments).

Subsequently, in *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457

U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), the Court ruled that district courts should only abstain under *Younger* if: (1) there are ongoing state proceedings of a judicial nature; (2) these proceedings implicate important state interests; and (3) the state proceedings offer adequate opportunity to raise federal claims. *See Id.* at 432, 102 S.Ct. 2515; *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir.1989). However, in *Pennzoil v. Texaco, Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987), the Court cautioned that it did "not hold that *Younger* abstention is always appropriate whenever a civil proceeding is pending in a state court. Rather ... we rely on the State's interest in protecting the authority of the judicial system, so that its orders and judgments are not rendered nugatory." *Id.* at 14 n. 12, 107 S.Ct. 1519 (internal quotations omitted) (holding that federal court could not enjoin state enforcement of a state judgment).

Amplifying these limitations, the Third Circuit and district courts in the Third Circuit have consistently held that district courts should only abstain under *Younger* where the state proceedings are "coercive" and not merely "remedial." *See O'Neill v. City of Philadelphia*, 32 F.3d 785, 791 n. 13 (3d Cir.1994) (citing *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 627 n. 2, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986)); *Francis v. Springfield Township*, 2002 WL 922110, at *1–2 (E.D.Pa. May 1, 2002) (DuBois, J.); *Cohen v. Township of Cheltenham*, 174 F.Supp.2d 307, 318–19 (E.D.Pa.2001) (DuBois, J.); *Remed Recovery Care Centers v. Township of Worcester*, 1998 WL 437272, at *2–3 (E.D.Pa. July 30, 1998) (Shapiro, J.); *Tinson v. Commonwealth*, 1995 WL 581978, at *4 (E.D.Pa. Oct. 2, 1995) (Brody, J.); *Independence Pub. Media of Philadelphia, Inc. v. Pa. Pub. Television Network Comm'n*, 813 F.Supp. 335, 340 (E.D.Pa.1993) (Padova, J.). "In remedial state proceedings, the plaintiff is attempting in both state and federal courts to vindicate a wrong inflicted by the state; in coercive state proceedings, the federal plaintiff is the state court defendant, and the state proceedings were initiated to enforce a state law." *ReMed*, 1998 WL 437272 at *3. *See also Cohen*, 174 F.Supp.2d at 319 (holding that *Younger* did not apply to a zoning claim in state court).

In this case plaintiff brought his state suit to remedy nearly the same "wrongs inflicted by the state" as are asserted in his federal action, i.e., the state's continued refusal to pay members of his putative class interest under the DAUPA. *ReMed*, 1998 WL 437272 at *3. These state proceedings do not resemble those coercive proceedings in which the Supreme Court has upheld *Younger* abstention. To the contrary, plaintiff's state action falls squarely in the remedial category, and the Court will not abstain under *Younger*.

### E. *Pullman* Abstention

 The parties disagree as to whether the DAUPA should be construed to require payment of interest, and no state court has ruled upon this issue. (Pl. Opp. at 20). Moreover, plaintiff is currently challenging the DAUPA and defendant's policy/practice of holding interest under the takings and due process provisions of the Pennsylvania Constitution in a pending state court action. Because the underlying state law in this matter is unsettled, and in light of the other relevant circumstances presented, this Court concludes it should abstain and stay any further proceedings under *R.R. Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

 Although neither party raised the possibility of *Pullman* abstention under these circumstances, the Court may raise the issue sua sponte, *see Bellotti v. Baird*,

428 U.S. 132, 143 n. 10, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976), and did so in this case. Following a teleconference initiated by the Court on this issue on December 15, 2004, plaintiff agreed by letter dated December 21, 2004 to stipulate to *Pullman* abstention. Notwithstanding this agreement, the Court writes briefly to explain the basis for its decision to abstain under *Pullman.*

A district court may abstain under *Pullman* when it encounters an unsettled issue of state law and resolution of the issue by a state court might eliminate or narrow the need to decide a federal constitutional issue. *See Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971; *Chez Sez III Corp. v. Township of Union,* 945 F.2d 628, 631 (3d Cir.1991). "[W]hen a federal constitutional claim is premised on an unsettled question of state law, the federal court should stay its hand in order to provide the state courts an opportunity to settle the underlying state-law question and thus avoid the possibility of unnecessarily deciding a constitutional question." *Harris County Comm'rs Court v. Moore,* 420 U.S. 77, 83, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975). Courts abstain under *Pullman* where the federal constitutional issues are "entangled in a skein of state law that must be untangled before the federal case can proceed," *Id.* at 85, 95 S.Ct. 870 (internal quotations omitted), such that federal court would be "making a tentative answer which may be displaced tomorrow by a state adjudication." *Pullman,* 312 U.S. at 500, 61 S.Ct. 643.

The Third Circuit has ruled that three "special circumstances" must exist for a court to abstain under *Pullman:*

(1) Uncertain issues of state law underlying the federal constitutional claims brought in federal court;

(2) State law issues amenable to a state court interpretation that would obviate the need for, or substantially narrow,

the scope of adjudication of the constitutional claims;

(3) A federal court's erroneous construction of state law would be disruptive of important state policies.

*Chez Sez III Corp. v. Township of Union,* 945 F.2d 628, 631 (3d Cir.1991) (citing *D'Iorio v. County of Delaware,* 592 F.2d 681, 686 (3d Cir.1978), *overruled on other grounds, Kershner v. Mazurkiewicz,* 670 F.2d 440, 448 (3d Cir.1982) (en banc)). Moreover, "[i]f the district court finds that all three of the 'special circumstances' are present, it must then make a discretionary determination as to whether abstention is in fact appropriate under the circumstances based on the weight of these criteria and other relevant factors." *Id. See also ACS Enters., Inc. v. Comcast Cablevision of Philadelphia, L.P.,* 1994 WL 185046, at *4 (E.D.Pa. May 12, 1994)(DuBois, J.) (adopting Third Circuit "special circumstances" rule).

In *ACS Enterprises,* with respect to the first *Chez Sez III* factor, this Court found that issues of state law are deemed uncertain where (1) "there is a federal constitutional challenge to a statute which in is unclear on its face and is susceptible to a construction by a state court that would avoid or modify the need to reach a federal question," 1994 WL 185046, at *5 (citing *Kusper v. Pontikes,* 414 U.S. 51, 54, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973)); or (2) "where the uncertain status of state law stems from the 'unsettled relationship between the state constitution and a statute.'" *Id.* (citing *Harris County Comm'rs Court v. Moore,* 420 U.S. 77, 84, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975)).

This case raises the first circumstance enunciated by the Court in *ACS Enterprises.* The Court concludes that the DAUPA is unclear on its face as to whether it requires the Treasury to pay interest on the funds received from the sale of plain-

tiff's stock. On one hand, § 1301.15 provides, "[w]hen property is paid or delivered to the State Treasurer under this article, the owner is entitled to receive income or other increments actually received by the State Treasurer." This provision appears to require payment of earned interest. However, § 1301.17(d) states that "[t]he State Treasurer shall be responsible to an owner only for the amount actually received by the State Treasurer upon sale of any property," and § 1301.17(e) states that the Treasurer "shall be required to sell all stocks, bonds and other negotiable financial instruments upon receipt of such items." These latter two provisions suggest that the Treasurer must sell stock upon receipt and is required to pay the owner only the amount received at sale. Because the statute is unclear on its face as to whether it requires payment of interest and no state court has ruled upon the issue, it is sufficiently uncertain to satisfy the first prong of *Chez Sez III*, 945 F.2d at 631.[5]

With respect to the second prong of *Chez Sez III*, the state court's resolution of the question of state law presented by plaintiff would eliminate the need for, or substantially narrow the scope of, this Court's constitutional ruling on the DAUPA. *Id.* Plaintiff's claim that the DAUPA is unconstitutional is based entirely upon the premise that the Act does not require payment of interest. Alternatively, if the DAUPA does require payment of interest,

the constitutional issues before the Court would be narrowed to whether defendant's violation of the Act violated plaintiff's due process rights. In sum, the constitutional issue presented to this Court is contingent upon the construction of this statute, a task which should initially be undertaken by the state court, further warranting abstention under *Chez Sez III*, 945 F.2d at 631

As to the third prong of *Chez Sez III*, the Court concludes that "erroneous construction" of the DAUPA in this matter "would be disruptive of important state policies" related to state authority to legally take private property—i.e., interest earned upon abandoned property. 945 F.2d at 631. In *ACS Enterprises*, this Court held that the state's statutory authority to engage in takings constituted an important enough state policy to abstain from construing the relevant state constitutional law. *See* 1994 WL 185046, at *7 (abstaining from issuing state constitutional ruling on a state statute permitting cable companies to "take an easement or right of way" to wire apartment buildings for cable service). Moreover, the Court finds that the state's authority to dispose of abandoned and unclaimed property for public purposes constitutes an important state policy.

In view of the presence of all three *Chez Sez III* factors, under the circumstances presented, this Court will exercise its dis-

---

5. Although plaintiff also challenges the DAUPA under the takings and due process provisions of the state constitution, thereby implicating the second circumstance identified in *ACS Enterprises*, these provisions merely parallel those of the U.S. Constitution at issue in this case. The Supreme Court had held that "abstention is not required for interpretation of parallel state constitutional provisions." *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 238 n. 4, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984). *See also ACS Enters.*, 1994 WL 185046 at *9 n. 4 ("Abstention cannot be based on the ground that, prior to the federal court's determination of federal constitutional claims, a state court should consider the validity of a state statute under a state law restriction that simply parallels the federal restriction on which a plaintiff relies."). Nonetheless, although this Court does not specifically invoke the existence of state constitutional claims as a grounds for abstention, adjudication of these claims in the state court could similarly obviate or narrow the federal issues presented before this Court.

cretion to abstain under *Pullman* from construing the "skein of state law that must be untangled," *Harris County*, 420 U.S. at 85, 95 S.Ct. 870, before determining the constitutionality of the DAUPA and the policies of the Treasurer which are challenged by plaintiff.

### F. *Pullman* Abstention Procedure

 By abstaining under *Pullman*, the Court does not abdicate its responsibility to adjudicate the federal issues potentially presented. *See England v. Louisiana State Bd. of Med. Exam'rs*, 375 U.S. 411, 415, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964) ("There are fundamental objections to any conclusion that a litigant who has properly invoked the jurisdiction of a Federal District Court to consider federal constitutional claims can be compelled, without his consent and through no fault of his own, to accept instead a state court's determination of those claims."). Instead, the Court merely postpones such adjudication until a state court determines whether the DAUPA requires payment of interest. *Id.* at 415–416, 84 S.Ct. 461; *Georgevich v. Strauss*, 772 F.2d 1078, 1094 n. 21 (3d Cir.1985). Under *England*, plaintiff may preserve his right to have his federal claims adjudicated before this Court by first raising only his state law issues before the state court, and then returning for adjudication of his remaining federal claims. 375 U.S. at 421–22, 84 S.Ct. 461. To do so, he should disclose his federal claims and this reservation to the state court. *Id.* In compliance with the procedure dictated by *Pullman* and *England*, this Court will retain jurisdiction over the federal claims pending a state court determination of the underlying state issues.

 In agreeing to abstention under *Pullman*, by letter dated December 21, 2004 plaintiff purported to reserve the right to adjudicate his federal claims in this Court at the conclusion of plaintiff's

pending state court proceedings regardless of whether the state court rules on the construction of the DAUPA. When advancing this position, plaintiff noted that the state court could dismiss his case as moot, leaving him with no foreseeable avenue for obtaining judicial construction of the DAUPA.

Although neither *Pullman* nor *England* expressly holds that a district court should vacate its stay under these circumstances, the Court will exercise its discretion to vacate the stay if the state court dismisses plaintiff's state law claims without construing the DAUPA and plaintiff demonstrates he has exhausted his ability to have this issue adjudicated in state court. In so doing, the Court notes that at least one other district court has vacated its *Pullman*-associated stay where plaintiff's state case was dismissed on standing grounds. *See Ratcliff v. County of Buncombe*, 663 F.Supp. 1003 (W.D.N.C.1987). Moreover, both *England* and other authorities support this Court's discretion to vacate its stay under similar circumstances—i.e., where the state court refuses to adjudicate the underlying state issues upon which *Pullman* abstention was based. *England*, 375 U.S. at 422 n. 12, 84 S.Ct. 461 ("[I]f the state court has declined to decide the state question because of the litigant's refusal to submit without reservation the federal question as well, the District Court will have no alternative but to vacate its order of abstention."); Wright & Miller § 4246 (noting that where state court refuses to adjudicate only state claims under *England* as part of prohibition against rendering advisory opinions, "the federal court is required to vacate its stay and decide all of the issues").

### V. CONCLUSION

For all of the foregoing reasons, the Court grants defendant's Motion to Dis-

miss the counts in which plaintiff asserts state law claims, Counts III, IV, V, and those portions of Count I alleging violations of the DAUPA, without prejudice to plaintiff's right to proceed with these claims in state court. The Court also grants defendant's Motion with respect to that portion of Count VI requesting restitution without prejudice to plaintiff's right to proceed with claims for such relief on the basis of state law in state court. The Court denies defendant's Motion to Dismiss the remaining federal constitutional claims in Count I and II, and plaintiff's request for prospective relief in Count VI subject to the limitations set forth in this Memorandum. However, the Court will abstain from further adjudication of these surviving federal claims pending a state court determination on the question of whether the DAUPA requires payment of interest to the plaintiff. In the event that the state court dismisses plaintiff's state claims without ruling on this question, and plaintiff demonstrates he has exhausted his ability to have the issue adjudicated in state court, plaintiff will be permitted to present this issue to the Court for consideration of the federal constitutional questions raised in the Amended Complaint.

An appropriate Order follows.

### ORDER

AND NOW, this 24th day of January, 2005, in consideration of Defendant's Motion to Dismiss (Doc. No. 11, filed June 10, 2004), Plaintiff's Response to Defendant's Motion to Dismiss (Doc. No. 14, filed July 2, 2004), Defendant's Reply Brief in Support of its Motion (Doc. No. 17, filed July 9, 2004), and related submissions of the parties, for the reasons set forth in the attached Memorandum, **IT IS ORDERED** as follows:

1. Defendant's Motion to Dismiss the state law claims in Counts III, IV, V, and that portion of Count I alleging violations of the DAUPA, is **GRANTED WITHOUT PREJUDICE** to plaintiff's right to proceed on such claims in state court.

2. Defendant's Motion to Dismiss that portion of Count VI requesting restitution on the basis of federal or state law is **GRANTED WITHOUT PREJUDICE** to plaintiff's right to proceed on such claims in state court on the basis of state law.

3. Defendant's Motion to Dismiss that portion of Count I based upon federal law, Count II, and that portion of Count VI requesting prospective relief on the basis of federal law, is **DENIED.**

4. The Court **ABSTAINS** from exercising jurisdiction at this time over the surviving portions of Counts I, II, and VI, under *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

5. The action with respect to the surviving federal claims and remedies in Counts I, II, and VI, is **STAYED** pending a determination in the courts of the Commonwealth of Pennsylvania as to whether the DAUPA, 72 Pa.C.S. 1301.01 et seq., requires the payment of interest earned upon property confiscated pursuant to that Act. Plaintiff may move to vacate this stay in the event that (a) the state court rules on the question whether the DAUPA requires payment of interest; or (b) the state court dismisses plaintiff's state claims without resolution of this question and plaintiff demonstrates he has exhausted his ability to have this question adjudicated in state court.

6. The case shall be **TRANSFERRED** to the Civil Suspense File.

7. The Clerk shall **MARK** the case **CLOSED FOR STATISTICAL PURPOSES.**

8. The Court shall **RETAIN** jurisdiction over the case and the case shall be **RETURNED** to the Court's active docket when there are no impediments to further proceedings and the case may proceed to final disposition.

9. The parties, through counsel, shall file and serve joint written status reports at four-month intervals or more frequently if warranted by the circumstances. One copy of each status report shall be served on the Court (Chambers, Room 12613) when the original is filed.